# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
**Civil Action No.**

| | | |
|---|---|---|
| 3 VENTURES, LLC and MJT Ventures LLC, individually and derivatively on behalf of Spice Tapas LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| NANA ATAKORA, BAFFOUR ATAKORA, and 1221 Hospitality LLC, | ) ) ) | **(JURY TRIAL DEMANDED)** |
| Defendants, | ) ) | |
| v. | ) ) | |
| SPICE TAPAS LLC, | ) ) | |
| Nominal Defendant. | ) | |

Plaintiffs 3 Ventures, LLC ("3 Ventures") and MJT Ventures LLC ("MJT Ventures"), individually and derivatively on behalf of Nominal Defendant Spice Tapas LLC ("Spice"), bring this action against Nana Atakora, Baffour Atakora, 1221 Hospitality LLC ("1221 Hospitality"), and Spice:

## INTRODUCTION

Defendants have provided Plaintiffs no information about Spice's business operations after January 2025. This is despite Defendants' repeated requests for information, filing a prior lawsuit alleging breach of their information rights, and sending a demand for inspection under N.C. Gen. Stat. § 57D-3-04(d). Instead of honoring these simple requests, Defendants continue to flout Plaintiffs' rights as minority members of Spice, operating the company under a shroud of secrecy

and with zero oversight. Not only does this violate North Carolina law, it also violates the parties' Operating Agreement, which requires, among other things, an annual meeting and submission of a business plan and budget.

Rather than focus their attention on Spice in Charlotte, Defendants have directed their attention elsewhere. Specifically, without notice to Plaintiffs, Defendants opened a new restaurant in Atlanta called "Spice Atlanta." This is problematic because Nana Atakora previously transferred all of his right, title, and interest in Spice's goodwill, intellectual property, and brand to Plaintiffs. By opening Spice Atlanta, Nana Atakora breached his agreement. And Spice Atlanta and those operating it are currently infringing on Plaintiffs' intellectual property rights because they have no right or title to do so.

For these reasons and those outlined below, Plaintiffs bring this action to enforce their rights.

**PARTIES AND JURISDICTION**

1.      Plaintiff 3 Ventures is a North Carolina limited liability company with its registered and principal office in Charlotte, North Carolina.

2.      Plaintiff MJT Ventures is a North Carolina limited liability company with its registered and principal office in Charlotte, North Carolina.

3.      Nana Atakora is a citizen and resident of Charlotte, North Carolina.

4.      Baffour Atakora is a citizen and resident of Charlotte, North Carolina.

5.      1221 Hospitality is a North Carolina limited liability company with its registered and principal office in Charlotte, North Carolina. Nana Atakora is the Manager of 1221 and he and Baffour Atakora are two of three Members of 1221.

6.      Spice is a North Carolina Limited Liability Company with its registered and

2

principal office in Charlotte, North Carolina. Spice has three members: 3 Ventures, MJT Ventures, and 1221 Hospitality.

7.      This action arises under federal law, in particular, under the Lanham Act § 43(a) (15 U.S.C. §1125(a)). Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition cases).

8.      This case also arises under the statutory and common law of North Carolina. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims because they arise from, or from part of, the same case or controversy as the federal law claims.

9.      This Court has personal jurisdiction over the Defendants and venue is proper here because Defendants are North Carolina citizens who reside in this District.

<b><u>FACTUAL BACKGROUND</u></b>

10.      On April 5, 2023, 3 Ventures, MJT Ventures, 1221 Hospitality, and Akhenthians Investments LLC ("Akhenthians") (a former Member of Spice) executed the Operating Agreement of Spice. A true and correct copy of the Operating Agreement is attached as **Exhibit 1**.

11.      The Operating Agreement established the following membership interests in Spice: 79% for 1221 Hospitality, 10% for 3 Ventures, 10% for Akhenthians, and 2% for MJT Ventures.

12.      At all relevant times 3 Ventures has had a 10% membership interest in Spice and MJT Ventures has had a 2% interest in Spice.

13.      3 Ventures also made an initial capital contribution of $100,000 to Spice.

14.      Also on April 5, 2023, Nana Atakora, who at the time was the sole owner of all of Spice's interest, entered into Membership Purchase Agreements ("MPAs") with 3 Ventures and MJT Ventures under which he "transfer[red] and convey[ed] all of [his] right, title, and interest in

3

and to [Spice], including the rights and obligations associated with [Spice's] assets including, but not limited to, all of [Spice's] property, inventory, accounts receivable, furniture, fixtures, contracts, goodwill, intellectual property, and the 'Spice Tapas' brand." The conveyance was for 3 Ventures and MJT Ventures respective percentage of interest in Spice that each was acquiring; 10% for 3 Ventures and 2% for MJT Ventures. Nana Atakora further represented and warranted to 3 Ventures and MJT Ventures that he "own[ed] and [had] good and marketable title" and the "full legal right to convey" such interests. True and correct copies of the MPAs are attached as **Exhibit 2**.

**The Atakoras Mismanage Spice**

15. Nana and Baffour Atakora were appointed initial Managers of Spice for a ten-year term unless they resigned or "are removed from office by majority agreement of the Members."

16. As Managers, the Atakoras must perform all duties reasonably necessary to conduct the business of Spice and they must perform such duties in good faith and in the best interests of the company. Put simply, they owe fiduciary duties to Spice.

17. The Atakora's duties as Managers also includes holding at least one meeting per year. Absent a meeting, they can only take actions through written consents describing the actions they have taken.

18. The Atakoras are also allowed to use Spice's funds as necessary to cover the company's reasonable expenditures.

19. Further, the Atakoras must create a plan of operation, setting forth the projected business plans and operations for the period covered by the plan of operation and a budget setting forth the estimated receipts and expenditures of the Company for the period covered by the budget.

20. In addition, the Atakoras must maintain Spice's books and records, including the

4

membership schedule, tax returns, financial statements for the three most recent years, minutes of every meeting of the Managers or Members, the plan of operations and budget, and any other information about Spice that would be reasonable to maintain.

21. Finally, the Managers are required to issue distributions to members whenever net revenue exceeds the reserve, which consists of three months of operating expenses.

22. The Atakoras have neglected their duties.

23. First, they have failed to maintain the books and records of Spice and produce information to which 3 Ventures and MJT Ventures are entitled despite numerous requests.

24. Concerned with the Atakoras' flippant attitude toward Spice's accounting practices and operations, 3 Ventures requested on February 8, 2024, that the Atakoras hire an accountant and bookkeeper to provide better accounting information for the purpose of understanding the "true financial health of Spice & paint a more accurate picture when it's time for owner distributions." 3 Ventures further requested that the Atakoras issue a more detailed profit and loss statement breaking out expenses and a monthly balance sheet. It also requested that the Atakoras send financial statements in advance of meetings to enable productive meetings about the company's financial health.

25. The Atakoras ignored nearly all of these requests.

26. Indeed, once again on April 4, 2024, 3 Ventures requested that the Atakoras provide detailed audited financial reports from an accountant and monthly financial reports with a balance sheet and profit and loss statement breaking out supporting details and breakdowns.

27. On July 12, 2024, another Member joined the fray, requesting that the Atakoras provide financial statements, general ledger since formation, bank statements since formation, detailed profit and loss statements since formation, reconciled balance sheet since formation,

invoices and receipts of payments since formation, employee agreements, and breakdown of expense categories in the profit and loss statement. On August 11, 2024, that member reiterated its request after receiving a limited response from the Atakoras.

28. After a meeting with the Atakoras on August 12, 2024, 3 Ventures repeated the request for information on August 13, 2024, and noted that some of this information was easily obtainable through online bank statements. After the Atakoras failed to provide any bank statements before December 2023, 3 Ventures again requested on August 14, 2024, that they provide all bank statements since entering into the Operating Agreement in April 2023.

29. Inexplicably, the Atakoras responded on August 15, 2024: "With regard to the other requested documents (Bank statements, General ledger, Invoices and/or receipts, Employee agreements etc) we cannot provide them." In so doing, the Atakoras claimed that they provided more information than their counsel advised them to provide and that the Members are not entitled to these books and records.

30. To the extent that the requested information does not exist, that constitutes a failure of the Atakoras to maintain the books and records of Spice as required under the Operating Agreement.

31. To the extent that the information exists and they simply refuse to provide it, that, too, constitutes a breach of the Operating Agreement, along with a violation of 3 Ventures' and MJT Ventures' information rights under N.C. Gen. Stat. § 57D-3-04.

32. On January 24, 2025, 3 Ventures and MJT Ventures, through counsel, requested the following information:

- Meeting minutes;
- Bank account statements;

- Credit card statements;
- Communications with Spice's accountant;
- Account login information for any business bank or credit card accounts;
- Contact information for Spice's business banker(s) or any accountant providing services to Spice;
- Account login information for QuickBooks;
- The Membership Purchase Agreement with Louis Baptiste (or the entity controlled by him), the repurchase agreement, and any communications related to same;
- The amount of money distributed from Spice's bank accounts to Nana Atakora, Baffour Atakora, or 1221 Hospitality;
- An explanation for the check to Richard Holder dated December 11, 2023 and in the amount of $20,833.33 and described as "Loan";
- The amount of any "Profits" and the allocation of same under Section 6.1.1 of the Operating Agreement; and,
- All profit and loss statements, balance sheets, projections, budgets, and general ledgers.

This request also constituted a derivative demand for the information. A true and correct copy of the Notice of Breach, Demand for Accounting, and Derivative Demand is attached hereto as **Exhibit 3.**

33.     More than six months after the request, the only information that the Atakoras provided was a general ledger for January 1, 2024 through January 31, 2025, an Income Statement for 2024, a Balance Sheet as of January 31, 2025, an Income Statement for January 2025, Spice's 2023 federal tax return, and a few vague scribbled "meeting minutes."

34.     Notably, the Atakoras' "meeting minutes" from July 10, 2024, stated:



35. Yet as discussed above, the Atakoras ended up refusing to provide the requested statements.

36. The Atakoras have not held a meeting since October 2024 or otherwise provided written notice of any actions taken in the absence of a meeting.

37. Nor have the Atakoras provided any plan of operation or budget since before 2025, as required under the Operating Agreement.

38. Even the information the Atakoras bothered to provide is inconsistent. As an example, the March 2024 unaudited income statement sent in April 2024 does not match the March column in the Income Statement for 2024 provided in March 2025.

39. The Atakoras have provided 3 Ventures and MJT Ventures no information about Spice's operations after January 2025.

40. Upon information and belief, the Atakoras are withholding the requested information to which the Members are entitled to conceal the Atakoras' wrongdoing and mismanagement of Spice.

41. Concerningly, the Atakoras have never issued a distribution to 3 Ventures or MJT

Ventures since in the more than 2 years since they became Members.

42. Yet they have been paying themselves Management salaries that fluctuate every month and were as much as $29,192.31 combined in August 2024.

43. Despite not issuing any distributions, the balance sheet the Atakoras provided for January 2025 showed $213,141 in cash assets. Back in February 2024, 3 Ventures requested that the Atakoras "solidify the number of reserves needed before distributions." They again failed to do so.

44. On March 9, 2026, Plaintiffs issued a Notice of Exercise of Inspection Rights under N.C. Gen Stat. § 57D-3-04 and Section 4.7.3 of the Operating Agreement to Nana and Baffour Atakora and Spice. A true and correct copy of this notice is attached as **Exhibit 4**. The notice requested documents that Plaintiffs are entitled to obtain under North Carolina law and the Operating Agreement. On March 17, 2026, Spice, through counsel, objected to the Notice and has not provided a single requested document. A true and correct copy of Spice's objection to the notice is attached as **Exhibit 5**.

**1221 Hospitality Transfers Its Membership Interest Without Notice, And Then The Atakoras Misappropriate Spice's Money To Buyback 1221 Hospitality's Interest**

45. Articles 3, 9 and 10 of the Operating Agreement establish limitations on the admission of new Members. Under those provisions, no Member shall have the right to voluntarily transfer its Membership Interest unless (a) the Managers deliver written notice to the Members, including the purchase price paid for the Membership Interest and the transferee's agreement to comply with the Operating Agreement, and (b) the remaining Members representing a majority of the interests in Spice (other than the interests of members involved in the transfer) consent to the transfer. Before selling its interest, the selling Member must also provide the other Members 30

9

days in which to match the purchase offer identified in the written notice.

46. As with their management duties, the Atakoras ignored these clear restrictions.

47. Through a Membership Interest Purchase Agreement with an effective date of September 15, 2023, 1221 Hospitality sold 6.6% of its membership interest in Spice to Baptiste Consulting LLC, and 3.4% of its membership interest in Spice to Akhenthians.

48. No notice of this potential transfer was provided to 3 Ventures and MJT Ventures until after the transfer had already been completed.

49. By breaching the Operating Agreement and failing to provide notice to 3 Ventures and MJT Ventures, the Atakoras (who are Members of 1221 Hospitality and Nana Atakora is its Manager) deprived 3 Ventures and MJT Ventures of their right of first refusal.

50. The transfer was also invalid and unauthorized because 1221 Hospitality failed to obtain the consent of the majority of the other Members—3 Ventures and MJT Ventures. Absent their consent, there was no majority of interest in Spice (excluding the interest held by 1221 Hospitality, the transferor, and Akhenthians, the transferee) who could have consented to the transfer because 3 Ventures and MJT Ventures comprised the full remaining membership interests.

51. Notably, the unauthorized transfer occurred mere weeks after the Atakoras told 3 Ventures that they needed more money, resulting in 3 Ventures issuing a $125,000 loan to Spice on August 28, 2023.

52. Even after the unauthorized transfer, the Atakoras failed to update the Membership Schedule as they were required to do as part of their books and records obligation. Moreover, Spice's Annual Report filed with the North Carolina Secretary of State in 2024 failed to identify Baptiste Consulting LLC as a Member.

53. After the Atakoras failed to provide the information requested by Baptiste

10

Consulting LLC in the summer of 2024, a dispute arose between them. The Atakoras resolved the dispute by having 1221 Hospitality buy back its membership interest from Baptiste Consulting LLC.

54.     Rather than use 1221 Hospitality's own funds to buy back its membership interest, the Atakoras misappropriated Spice's funds to pay Baptiste Consulting LLC for the repurchase of 1221 Hospitality's membership interest. This misappropriation constitutes conversion, a breach of Section 4.6 of the Operating Agreement, a breach of the Atakoras' and 1221 Hospitality's fiduciary duties to Spice under the Operating Agreement and N.C. Gen. Stat. § 57D-3-21, and embezzlement under N.C. Gen. Stat. § 14-90.

55.     On top of the misappropriation, this second transfer of Membership Interests was unauthorized and invalid under the Operating Agreement, and breached the Operating Agreement for the same reasons as the first transfer. No notice was provided to 3 Ventures or MJT Ventures until after the transfer had been completed. So 3 Ventures and MJT Ventures had no opportunity to exercise their right of first refusal. Likewise, they were unable to vote on whether to approve the transfer, and their consent was required for the transfer to be valid.

56.     Plaintiffs issued a derivative demand addressing these and other issues on March 9, 2026. A true and correct copy of the derivative demand is attached as **Exhibit 6**. Defendants failed to respond to the derivative demand and have taken no action to address the issues raised in the derivative demand. Thus, Plaintiffs have standing to bring its derivative claims.

**The Atakoras Are Removed As Managers**

57.     Section 4.2 of the Operating Agreement provides that the Managers can be "removed from office by majority agreement of the Members."

58.     On November 19, 2025, 3 Ventures, MJT Ventures—comprising a majority (two

11

out of three) of the remaining Members—voted to remove the Atakoras as Managers of Spice. A true and correct copy of this action is attached hereto as **Exhibit 7**.

59. The Atakoras and 1221 Hospitality dispute the validity of their removal and have continued to operate Spice as Managers despite no longer being authorized to do so.

60. By continuing to use Spice's funds without authorization since the vote to remove them, including paying themselves salaries, the Atakoras have misappropriated Spice's funds and continue to do so.

**Defendants Infringe on Plaintiffs' and Spice's Intellectual Property Rights**

61. On May 1, 1221 Hospitality, acting through the Atakoras, opened Spice Atlanta.

62. Nana Atakora previously transferred 10% to 3 Ventures and 2% to MJT of all right, title, and interest in and to Spice, including the rights and obligations associated with Spice's assets including, but not limited to, all of Spice's property, inventory, accounts receivable, furniture, fixtures, contracts, goodwill, intellectual property, and the 'Spice Tapas' brand. Exhibit 2, § 1.4.

63. As a result of this transfer, Plaintiffs own an interest in Spice's goodwill, intellectual property, and brand.

64. Yet without Plaintiffs' authorization, Defendants used Spice's goodwill, intellectual property, and brand to create and open Spice Atlanta.

65. Unlike the traditional franchise model, Defendants did not license Spice's goodwill, intellectual property, or brand, or otherwise enter into a franchise agreement.

66. Indeed, Defendants did not even contact Plaintiffs about Spice Atlanta or otherwise ask permission to use Spice's goodwill, intellectual property, or brand.

67. Defendants and Spice Atlanta are therefore actively infringing on Plaintiffs' and Spice's intellectual property rights. They are also engaging in unfair competition and unfair and

12

deceptive trade practices.

68. Defendants' carbon copy of Spice's blueprint is blatant and most obvious when examining the two websites.

69. Spice's website is www.spicecharlotte.com. Spice Atlanta's website is www.spiceatl.com.

70. The footer on each website is identical:



71. Nothing in Spice's Operating Agreement establishes it as a "1221 Hospitality concept." Nor has Spice or Plaintiffs authorized 1221 Hospitality to advertise Spice as "1221 Hospitality's concept."

72. Moreover, to the extent that Spice's website is protected by a registered copyright (and Plaintiffs found no relevant copyright registration), Defendants are infringing on such copyright.

73. The "About Us" page on each website is identical, except for replacing Charlotte with Atlanta and changing two pictures:

## [www.spicecharlotte.com/about-us](www.spicecharlotte.com/about-us)



# www.spiceatl.com/about-us#intro



74. These images also show that Spice and Spice Atlanta are using the exact same font for exterior signage:





16

75. The Cocktails menus are identical, from the names and ingredients to the order of the list and the prices:

**www.spicecharlotte.com/menu**



# www.spiceatl.com/menu



76. The majority of the other menu items are also identical and priced the same.

77.     The "Careers" page on each website is identical:

**www.spicecharlotte.com/careers**



# www.spiceatl.com/careers



78. The social media pages for Spice and Spice Atlanta are also nearly identical:



www.facebook.com/spice.charlotte

www.facebook.com/atl.spice/

79. As illustrated above, Defendants replicated Spice's intellectual property, goodwill, and brand in creating Spice Atlanta. They did so without authorization. And Defendants continue to infringe on Spice's and Plaintiffs' intellectual property rights each day that Spice Atlanta remains open.

**FIRST DERIVATIVE CAUSE OF ACTION**
**DECLARATORY JUDGMENT (Against the Atakoras and 1221 Hospitality)**

80. The above allegations are realleged and incorporated by reference.

81. There is a real, present, and justiciable controversy between the Members, Spice, and the Atakoras about whether the Atakoras have been removed as Managers under the Operating Agreement.

82. 3 Ventures and MJT Ventures request a declaratory judgment declaring that the Atakoras have been removed as Managers under Section 4.2 of the Operating Agreement pursuant to the vote of a majority of the Members of Spice.

21

83. There is also a real, present, and justiciable controversy between 3 Ventures, MJT Ventures, Spice, and 1221 Hospitality about whether the repurchased membership interest from Baptiste Consulting LLC are owned by Spice or 1221 Hospitality.

84. Because Spice's funds were used to purchase Baptiste Consulting LLC's membership interest, 3 Ventures and MJT Ventures contends that Spice rather than 1221 Hospitality repurchased the 6.6% membership interest of Baptiste Consulting LLC, thereby increasing the relative membership interest of the remaining members. 1221 Hospitality disagrees.

85. 3 Ventures and MJT Ventures request a declaratory judgment declaring that Spice purchased the 6.6% membership interest of Batiste Consulting LLC and that the remaining Members' membership interest will be adjusted proportionately to reflect that purchase by Spice.

## SECOND DERIVATIVE CAUSE OF ACTION
### VIOLATION OF N.C. GEN. STAT. § 57D-3-04 (Against the Atakoras)

86. The above allegations are hereby realleged and incorporated by reference.

87. As outlined above, Spice, through the Atakoras, has refused to provide 3 Ventures and MJT Ventures the information that they are entitled to as Members under N.C. Gen. Stat. § 57D-3-04.

88. 3 Ventures and MJT Ventures provided reasonable notice and requested reasonable information consistent with their information rights.

89. 3 Ventures and MJT Ventures are entitled to an order requiring Spice to provide the information to which they are entitled as Members.

## THIRD DERIVATIVE CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTIES (Against the Atakoras and 1221 Hospitality)

90. The above allegations are hereby realleged and incorporated by reference.

91. The Atakoras and 1221 Hospitality owe fiduciary duties to Spice.

22

92. As outlined above, the Atakoras and 1221 Hospitality have breached their fiduciary duties, including through mismanaging Spice and misappropriating the funds of Spice for the benefit of 1221 Hospitality alone. The Atakoras continued use of Spice's funds without authorization constitutes a further breach of their fiduciary duties and misappropriation.

93. These breaches of fiduciary duties were done willfully, knowingly, recklessly, and in conscious disregard to the best interest of Spice.

94. Upon information and belief, Defendants' breaches of fiduciary duties have caused Spice damages in an amount to be proven at trial.

## FOURTH DERIVATIVE CAUSE OF ACTION
### CIVIL CONSPIRACY (Against the Atakoras and 1221 Hospitality)

95. The above allegations are hereby realleged and incorporated by reference.

96. Upon information and belief, the Atakoras and 1221 Hospitality all agreed to perform unlawful acts, including the misappropriation of Spice's funds to repurchase 1221 Hospitality's membership interest, as alleged above.

97. Defendants are individually liable to Spice for the acts any of them performed in furtherance of their civil conspiracy.

98. Upon information and belief, Defendants' civil conspiracy to perform unlawful acts has caused Spice damages in an amount to be proven at trial.

## FIFTH DERIVATIVE CAUSE OF ACTION
### CONVERSION (Against the Atakoras and 1221 Hospitality)

99. The above allegations are hereby realleged and incorporate by reference.

100. Spice owns its bank account.

101. As outlined above, without authorization, the Atakoras, acting on behalf of 1221 Hospitality, converted the funds in Spice's bank account for 1221 Hospitality's use.

23

102. In so doing, the Atakoras and 1221 Hospitality wrongfully possessed and converted the funds of Spice.

103. Furthermore, since their removal as Managers, the Atakoras have continued to wrongfully possess and convert Spice's funds without authorization, including paying themselves salaries.

104. Upon information and belief, Defendants' conversion has caused Spice damages in an amount in an amount to be proven at trial.

**SIXTH DERIVATIVE CAUSE OF ACTION**
**CIVIL EMBEZZLEMENT (Against the Atakoras and 1221 Hospitality)**

105. The above allegations are hereby realleged and incorporated by reference.

106. By virtue of their prior status as Managers, the Atakoras had and continue to have access and control of Spice's funds.

107. They fraudulently, or knowingly and willfully, misapplied and converted to their own use as Members and Manager of 1221 Hospitality, funds belonging to Spice.

108. They have also knowingly and willfully converted to their own use funds belonging to Spice by continuing to pay themselves unauthorized salaries after being removed as Managers of Spice.

109. Upon information and belief, Defendants' civil embezzlement has caused Spice damages in an amount in an amount to be proven at trial.

**FIRST INDIVIDUAL CAUSE OF ACTION**
**BREACH OF OPERATING AGREEMENT (Against 1221 Hospitality)**

110. The above allegations are hereby realleged and incorporated by reference.

111. The Operating Agreement is a valid and binding agreement.

112. As outlined above, 1221 Hospitality breached multiple provisions of the Operating

24

Agreement.

113.   Upon information and belief, 1221 Hospitality's breaches of the Operating Agreement have caused 3 Ventures and MJT ventures damages in an amount to be proven at trial.

**SECOND INDIVIDUAL CLAIM**
**UNFAIR COMPETITION – TRADEMARK AND TRADE NAME INFRINGEMENT UNDER SECTION 43(a)(1)(A) OF THE LANHAM ACT (Against 1221 Hospitality, Nana Atakora, and Baffour Atakora)**

114.   The above allegations are hereby realleged and incorporated by reference.

115.   Under the MPAs, Plaintiffs own an interest in Spice's intellectual property, including its trade name and trademarks.

116.   Spice Atlanta is not a registered entity in North Carolina or Georgia. Spice Atlanta is operated by 1221 Hospitality. Upon information and belief, Nana and Baffour Atakora manage Spice Atlanta, and directed, guided, and participated in all intellectual property infringement alleged herein. At all relevant times, the Atakoras have controlled 1221 Hospitality and Spice Atlanta. The Atakoras are encouraging 1221 Hospitality and Spice Atlanta to infringe on Plaintiffs' and Spice's intellectual property rights.

117.   "Spice" is Spice's trade name, which is distinctive and used by the business in interstate commerce.

118.   "Spice" is also a distinctive service mark being used for a genuine commercial purpose as Spice's restaurant name. The "Spice" mark includes its stylized use in signage and advertising, including in its website. It is also used for interior signage:

25



119.    Spice's restaurant location is in Charlotte, North Carolina, and it is engaged in interstate commerce, including with respect to sourcing food products.

120.    The "Spice" mark is critical to advertising to the general public and promoting the restaurant in a uniform manner. Based on Spice's concerted advertising and branding efforts, consumers associate "Spice" with its restaurant.

121.    Since the restaurant's opening in 2023, the "Spice" mark has been used on all signage, social media, Spice's website, and all other interstate advertising to promote the restaurant's name and to establish brand name recognition for all consumers. As an example, it was used to advertise the restaurant for Charlott Restaurant Week in January:



The mark and trade name have remained in continuous use since its inception.

122. Spice used the "Spice" mark and trade name for 2.5 years before Defendants opened Spice Atlanta and began using the Spice mark and trade name.

123. The "Spice" mark and trade name is known and used in North Carolina, South Carolina, and Georgia, including but not limited to, the use of the mark and trade name on its generally accessible website, social media advertising, and restaurant review and booking software (Yelp, OpenTable, etc.).

124. Defendants are currently using the "Spice" mark and trade name in commerce with respect to Spice Atlanta, and they are doing so without Spice's and Plaintiffs' authorization.

125. Defendants' unauthorized use of the "Spice" mark and trade name is in connection with advertising Spice Atlanta.

126. Defendants' unauthorized use of the "Spice" mark and trade name with respect to Spice Atlanta is likely to confuse consumers. Given the same use of the "Spice" mark and trade name, consumers are likely to believe that the restaurants are affiliated or have a franchise relationship when, in fact, they are not affiliated and have no franchise relationship.

127. Defendants' unauthorized use of the "Spice" mark and trade name has damaged Plaintiffs in an amount to be proven at trial.

128. Defendants should be enjoined from further unauthorized use of the "Spice" mark and trade name because Defendants' conduct has caused, and is continuing to cause, irreparable injury to Plaintiffs, who own the intellectual property at issue.

## THIRD INDIVIDUAL CLAIM
### UNFAIR COMPETITION – FALSE ADVERTISING UNDER SECTION 43(a)(1)(A) OF THE LANHAM ACT (Against 1221 Hospitality, Nana Atakora, and Baffour Atakora)

129. The above allegations are hereby realleged and incorporated by reference.

130. Defendants are falsely advertising that Spice Atlanta is affiliated with or has a franchise relationship with Spice.

131. Defendants' misrepresentation is material and is likely to influence customers who are aware of Spice, along with creating the misperception that Spice Atlanta is part of a larger and more legitimate restaurant group.

132. Defendants' misrepresentation has the likelihood to deceive and does in fact deceive consumers about the relationship (or lack thereof) between Spice Atlanta and Spice.

133. Defendants' misrepresentation about Spice Atlanta is made on the internet and in interstate commerce.

28

134.     Plaintiffs, who own an interest in Spice's goodwill, intellectual property, and brand name, have been and will continue to be injured as a result of the misrepresentation, including by lessening of goodwill associated with Spice based on the lesser-established and lesser-known Spice Atlanta. As an example, customers will associate negative reviews and experiences like the below with Spice, even though there is no relationship between Spice Atlanta and Spice:



135. Defendants' false advertising has damaged Plaintiffs in an amount to be proven at trial.

136. Defendants should be enjoined from further false advertising because Defendants' conduct has caused, and is continuing to cause, irreparable injury to Plaintiffs, who own the intellectual property at issue.

## FOURTH INDIVIDUAL CLAIM
### UNJUST ENRICHMENT (Against 1221 Hospitality, Nana Atakora, and Baffour Atakora)

137. The above allegations are hereby realleged and incorporated by reference.

138. Defendants have received an improper benefit from the good will and brand recognition of Spice through their unauthorized use of Plaintiffs' intellectual property, including Spice's mark and trade name.

139. But for the benefit of the Spice mark and trade name, Defendants would have had to expend considerable time and expense to generate the good will and brand recognition associated with Spice with respect to the opening of Spice Atlanta.

140. Defendants have been unjustly enriched by retaining this benefit without providing Plaintiffs any payment for the use of their intellectual property.

141. As a result of Defendants' wrongful acts and unjust enrichment, Plaintiffs have suffered and will continue to suffer damages.

## FIFTH INDIVIDUAL CLAIM
### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NORTH CAROLINA COMMON LAW (Against 1221 Hospitality, Nana Atakora, and Baffour Atakora)

142. The above allegations are hereby realleged and incorporated by reference.

143. Defendants have misappropriated the "Spice" mark and trade name through their unauthorized use of the mark and trade name in connection with spice Atlanta.

30

144. As described above, Defendants have also engaged in false advertising.

145. Defendants' trademark infringement and unfair competition is likely to cause confusion, mistake, or deception amongst consumers.

146. Defendants' conduct has caused and is continuing to cause damage to Plaintiffs.

147. Defendants' conduct has been willful, wanton, reckless, and in total disregard to Plaintiffs' ownership rights.

148. Unless enjoined, Defendants' conduct will continue to cause irreparable harm to Plaintiffs.

**SIXTH INDIVIDUAL CLAIM**
**UNFAIR AND DECEPTIVE TRADE PRACTICES N.C. GEN. STAT. § 75-1.1 (Against 1221 Hospitality, Nana Atakora, and Baffour Atakora)**

149. The above allegations are hereby realleged and incorporated by reference.

150. At all relevant times, Defendants were engaged in commerce in the State of North Carolina and were affecting North Carolina commerce.

151. Defendants' unlawful activities outlined above, such as trademark and trade name infringement and false advertising under the Lanham Act and North Carolina common law, constitute violations of the North Carolina Unfair and Deceptive Trade Practices Act.

152. Defendants deceptively and confusingly suggest to consumers that Spice authorized Spice Atlanta or that Spice Atlanta is somehow affiliated with Spice when it is not. Defendants' conduct was intended to and did cause confusion among consumers. Defendants' conduct is calculated to deceive the public and constitutes unfair and deceptive business practices.

153. As a direct and proximate cause of Defendants' unlawful, unfair, and infringing business practices, Defendants have damaged Plaintiffs and Defendants have profited unfairly off Plaintiffs' ownership of the Spice mark, good will, and brand name.

31

154.    Pursuant to N.C. Gen. Stat §75-1.1 *et seq,* Plaintiffs are entitled to treble damages and attorneys' fees for Defendants' unfair and deceptive acts, as well as any other remedies provided under the statute.

## SEVENTH INDIVIDUAL CLAIM
### BREACH OF CONTRACT (Against Nana Atakora)

155.    The above allegations are hereby realleged and incorporated by reference.

156.    Pursuant to the MPAs, Nana Atakora transferred all of his interest in Spice's goodwill, intellectual property, and the Spice brand to Plaintiffs.

157.    Nana Atakora has breached the MPAs by continuing to exercise ownership over the transferred assets, especially in connection with Spice Atlanta.

158.    Pursuant to the MPAs, Nana Atakora also represented and warranted that he had good and marketable title and the full legal right to convey the intellectual property assets.

159.    To the extent that Nana Atakora did not have good and marketable title or the full legal right to convey the intellectual property assets, he breached the MPAs.

160.    Nana Atakora's breach of the MPAs has damaged Plaintiffs in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

1.  Grant judgment in Plaintiffs' favor and against Defendants on all counts;

2.  Pursuant to 15 U.S.C. § 1116 and/or other applicable law, permanently enjoin Defendants, including their officers, agents, employees, successors, assigns, and all other persons and entities in privity and acting in concert with Defendants, from infringing on Spice's intellectual property, including prohibiting further use and advertisement of (a) Spice marks and trade name, or any confusingly similar marks alone or in combination with other words, symbols, or designs, (b) any trade name, words, abbreviations, or combinations thereof that would imitate, resemble, or suggest the Spice mark, (c) any statement or representation that falsely designates or describes

32

Spice Atlanta as authorized, affiliated with, or associated with Spice, or that is likely to confuse consumers as to the affiliation (or lack thereof) between Spice Atlanta and Spice;

3. Pursuant to 15 U.S.C. § 1116 and/or other applicable law, require that Defendants remove from any and all websites and social media the false, deceptive and misleading advertising for Spice Atlanta and infringing use of Spice's mark and tradename, as described in the Complaint;

4. Award damages under 15 U.S.C. § 1117, and/or other applicable law, including, without limitation, disgorgement of profits, lost profits, a reasonable royalty, and/or any other damages sufficient to compensate Plaintiffs for Defendants' trademark infringement, false advertising, and unfair competition;

5. An accounting to determine the proper amount of damages;

6. Award a three-fold increase in damages under 15 U.S.C. § 1117 and/or other applicable law, for Defendants' willful, wanton, and deliberate acts of infringement and unfair methods of competition and deceptive practices;

7. Award pre- and post-judgment interest pursuant to 15 U.S.C. § 1117 and/or other applicable law;

8. Award treble damages (N.C. Gen. Stat § 75-16) and attorneys' fees (N.C. Gen. Stat. § 75-16.1) pursuant to the North Carolina Unfair & Deceptive Trade Practices Act;

9. Enter a judgment declaring that the Atakoras have been removed as Managers of Spice;

10. Enter a judgment declaring that Spice purchased the 6.6% membership interest of Batiste Consulting LLC and that the remaining Members' membership interest is adjusted proportionately to reflect that purchase;

11. Order the Atakoras and Spice to provide Plaintiffs the information to which they are entitled under N.C. Gen. Stat. § 57D-3-04;

12. Award Spice damages in excess of $75,000 on Plaintiffs' derivative claims;

13. Award Spice punitive damages on Plaintiffs' derivative claims;

14. Award Plaintiffs damages on their individual cause of action;

15. Award Plaintiffs pre and post-judgment interest;

16. Award Plaintiffs their reasonable attorneys' fees under N.C. Gen. Stat. § 57D-8-05;

33

17. Hold a trial by jury on all claims in which such a right exists;

18. Tax the costs of this civil action against the Defendants; and

19. Grant such other and further relief as it deems just and proper.


This 16th day of June 2026.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Patrick Grayson Spaugh
Patrick Grayson Spaugh (N.C. Bar No. 49532)
Philip Mayer (N.C. Bar No. 52288)
301 South College Street, Suite 3500
Charlotte, North Carolina  28202-6037
Telephone:  (704) 331-4996
Facsimile:  (704) 338-7854
Email:  Patrick.Spaugh@wbd-us.com

*Attorney for Plaintiffs*

34