IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:26-cv-00471

| | |
|---|---|
| **3 Ventures, LLC and MJT Ventures LLC, individually and derivatively on behalf of Spice Tapas LLC**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Nana Atakora, Baffour Atakora, and 1221 Hospitality LLC,**<br><br>**Defendants,**<br><br>**v.**<br><br>**Spice Tapas LLC,**<br><br>**Nominal Defendant** | **Memorandum of Law in Support of Defendants' Motion to Dismiss** |

## Table of Contents


**I. Introduction** ... 3
**II. Factual Allegations** ... 3
**III. Legal Standard** ... 5
**IV. Argument** ... 5
**A. Plaintiffs Fail to State a Claim for Violation of the Lanham Act** ... 5
**1. Plaintiffs purchased LLC interests only; Nana could not sell Spice's mark.** ... 5
**2. Alternatively, if Nana owned the mark, Plaintiffs' construction makes Nana a co-owner entitled to use it and to authorize its use.** ... 7
**3. Plaintiffs cannot rescue the trademark claims by recasting them as derivative.** ... 7
**4. Plaintiffs allege no injury to their own commercial sales or reputation.** ... 8
**5. The Complaint does not plausibly plead a protectable unregistered word mark.** ... 8
**6. The Third Individual Claim pleads no independent false-advertising claim.** ... 9
**7. Any surviving Lanham Act claim is limited to the territory in which Spice has priority.** ... 9
**8. The conclusory allegations do not establish personal liability of either Atakora.** 10

**B. The Court Should Decline Supplemental Jurisdiction.** .............................................. 10

**C. Alternatively, the Derivative Claims should be Dismissed or Narrowed.** ................ 11

**1. The Complaint is not verified.** ..................................................................... 11

**2. The Declaratory Judgment claim should be dismissed to the extent it asks the Court to readjust Spice's membership interests because this claim is not derivative and is not authorized by substantive law.** ......................................................................... 11

**3. The Second Derivative Cause of Action should be dismissed as pleaded because § 57D-3-04 inspection rights belong to the individual member, not the LLC itself** ......... 12

**4. The Third Derivative Cause of Action fails as to 1221 Hospitality because it owed no fiduciary duty to Spice.** ......................................................................................... 13

**5. The Fourth Derivative Cause of Action is barred by intra-corporate immunity.** 14

**6. The Fifth Derivative Cause of Action for Conversion fails against the Atakoras as to the alleged salary payments and fails entirely against 1221 Hospitality** .................. 15

**7. The Sixth Derivative Cause of Action fails against 1221 Hospitality because Plaintiffs do not allege embezzlement by 1221.** ............................................................... 16

**D. The Individual Claims should be Dismissed or Narrowed.** ....................................... 17

**1. The First Individual Claim, for Breach of the Operating Agreement against 1221 Hospitality should be dismissed or narrowed because it conflates injury to Spice, duties imposed on the Managers, and alleged transfer violations causing no identifiable loss.** ..........................................................................................17

**2. The Second and Third Individual Claims should be dismissed as discussed in Section IV(A).** ........................................................................................................... 18

**3. The Fourth Individual Claim fails to state a claim for unjust enrichment.** .......... 18

**4. The Fifth Individual Claim should be dismissed because Plaintiffs do not own the alleged mark, plead an individual injury, or satisfy the derivative-demand requirement for this claim which belongs exclusively to Spice Tapas LLC.** ...................................... 20

**5. The Sixth Individual Claim fails to state a Chapter 75 claim** ................................ 21

**6. The Seventh Individual Claim fails because the MPAs do not impose the obligations Plaintiffs allege Nana breached.** ......................................................................... 22

**E. The jury demand should be stricken to the extent covered by the Membership Interest Purchase Agreement.** ........................................................................................... 23

**V. Conclusion** ............................................................................................................ 23

Defendants Nana Atakora, Baffour Atakora, and 1221 Hospitality LLC (collectively "Defendants"), by and through the undersigned counsel, submit the following Memorandum of Law in Support of their Motion to Dismiss.

## I. Introduction

This action concerns two related disputes involving Spice Tapas LLC. Plaintiffs 3 Ventures and MJT Ventures hold minority membership interests in Spice and assert claims arising from the company's governance, access to company records, the use of company funds, and Defendants' involvement with a restaurant operating in Atlanta. Plaintiffs bring some claims individually and others purportedly on Spice's behalf.

The Second and Third Individual Claims, arising under the Lanham Act, provide the only asserted basis for original federal jurisdiction. Those causes depend on Plaintiffs' contention that the Membership Interest Purchase Agreements conveyed direct rights in Spice's name, marks, and goodwill. This memorandum first addresses the ownership, injury, protectability, and pleading issues presented by those federal causes of action. If they are dismissed, Defendants request that the Court decline supplemental jurisdiction over the remaining state law claims. Alternatively, the memorandum addresses the claim-specific grounds for dismissing or narrowing those claims and the contractual jury waiver applicable to claims against Nana Atakora arising from the Membership Interest Purchase Agreements.

## II. Factual Allegations

The facts alleged in the Complaint, taken as true for purposes of this Motion, are as follows. Spice Tapas LLC ("Spice") is a North Carolina LLC that operates a Charlotte restaurant. (Compl. ¶¶ 1–6.) Its Operating Agreement identifies 1221 Hospitality as a 79% Member, 3 Ventures as a 10% Member, Akhenthians Investments LLC as a 9% Member, and MJT Ventures as a 2%

Member. (Compl. Ex. 1, Sched. A.) Nana and Baffour Atakora were appointed as Spice's Managers, who possess exclusive management authority but may be removed "by majority agreement of the Members." (Compl. Ex. 1 §§ 4.1–4.2.) All company property must be titled and held in Spice's name. (*Id.* § 14.4.)

Through separate Membership Interest Purchase Agreements ("MPAs"), Nana sold 10% of his membership interest to 3 Ventures and 2% to MJT Ventures. (Compl. Ex. 2 §§ 1.1–1.2.) Section 1.4 of each MPA conveys Nana's rights "in and to the Interest," including the rights and obligations associated with Spice's assets. The MPAs also contain an integration clause and a jury waiver covering litigation related to the transactions or the relationships created by the agreements. (*Id.* §§ 5.2, 5.12.)

Plaintiffs allege that 1221 transferred part of its membership interest to Baptiste Consulting LLC without the required notice and consent and that Spice later funded 1221's repurchase of that interest. (Compl. ¶¶ 45–56.) Plaintiffs' January 24, 2025 and March 9, 2026 derivative demands sought company action concerning the Baptiste transaction. (Compl. Exs. 3, 6.) The March demand also sought confirmation of the Atakoras' removal and the appointment of new Managers. (Compl. Ex. 6.)

On November 19, 2025, 3 Ventures and MJT Ventures acted to remove Nana and Baffour as Managers under § 4.2 of the Operating Agreement. (Compl. ¶¶ 57–60 & Ex. 7.) Plaintiffs allege that compensation paid to the Atakoras afterward was unauthorized. (Compl. ¶ 108.) Their March 9, 2026 derivative demand sought corrective action concerning the removal but did not ask Spice to investigate or recover any identified post-removal payment. (Compl. Ex. 6.) The separate inspection demand requested records under N.C. Gen. Stat. § 57D-3-04 and Operating Agreement § 4.7.3, but did not demand that Spice take suitable action concerning any identified post-removal

payment. (Compl. Ex. 4.) Spice objected to portions of the inspection demand and offered to confer. (Compl. Ex. 5.)

Additionally, Plaintiffs allege that 1221 opened an Atlanta restaurant using the "Spice" name, similar branding, and similar online content. (Compl. ¶¶ 61–79.) Plaintiffs asserted the resulting Lanham Act claims individually, not derivatively on Spice's behalf.

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when the complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) Courts should "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails," and dismissal is appropriate when the attached document "negates the claim." *Goines v. Valley Community Services Board*, 822 F.3d 159, 166 (4th Cir. 2016) (cleaned up).

## IV. Argument

### A. <u>Plaintiffs Fail to State a Claim for Violation of the Lanham Act</u>

#### 1. Plaintiffs purchased LLC interests only; Nana could not sell Spice's mark.

Plaintiffs' ownership theory fails for three related reasons: the MPAs conveyed only membership interests; Spice, not Nana, owned the alleged mark and goodwill; and any right to enforce that property belongs to Spice, not Plaintiffs individually.

Each MPA defines the purchased "Interest" as either 10% or 2% of Nana's "membership interest units in the Company." (Compl. Ex. 2, p. 1 § 1.1, p. 11 § 1.1.) Section 1.4 transfers Nana's rights "in and to the Interest," including rights associated with Spice's assets; it does not transfer the assets themselves. The Operating Agreement confirms that distinction by requiring all company property to be held in Spice's name. (Compl. Ex. 1 § 14.4.)

North Carolina law reaches the same result. An LLC is distinct from its interest owners, and an ownership interest consists of economic, governance, information, and derivative rights in the LLC, not ownership of its assets. N.C. Gen. Stat. §§ 57D-1-03(25), 57D-2-01(a), 57D-5-01. "Specific assets of an LLC . . . are owned by the entity and are not the property of the interest owners." *Chafin v. Chafin*, 250 N.C. App. 19, 27, 791 S.E.2d 693, 699 (2016). Because the alleged mark and goodwill belonged to Spice, Nana could not convey them individually. Plaintiffs acquired membership interests, not title to Spice's intellectual property.

Plaintiffs' alternative warranty theory does not establish otherwise. They allege that Nana breached the MPAs "[t]o the extent" he lacked title or authority to convey Spice's intellectual property. (Compl. ¶¶ 158–59.) If Nana lacked title, Plaintiffs may have a contract theory, but they did not acquire property Nana did not own. That allegation therefore cannot establish Plaintiffs' ownership of Spice's mark.

Because the alleged mark and associated goodwill belong to Spice, the right to enforce them also belongs to Spice. Any unauthorized use therefore injured Spice and supports, if anything, a claim belonging to Spice, not individual claims by Plaintiffs based on their membership interests. Plaintiffs accordingly cannot maintain the Second and Third Individual Claims in their own names.

**2. Alternatively, if Nana owned the mark, Plaintiffs' construction makes Nana a co-owner entitled to use it and to authorize its use.**

Alternatively, if Nana personally owned the mark and the MPAs conveyed direct interests in it, Plaintiffs acquired only fractional interests, leaving Nana a co-owner entitled to use and authorize use of the mark. The conveyances pursuant to the MPAs were limited to the defined "Interests": 10% to 3 Ventures and 2% to MJT Ventures. (Compl. Ex. 2, p. 1 §§ 1.1, 1.4, p. 11 §§ 1.1, 1.4.) Nothing in the MPAs transferred the entire mark, granted Plaintiffs exclusive rights, prohibited Nana's continued use, or gave Plaintiffs the exclusive right to enforce it. On Plaintiffs' construction, Nana therefore retained the remaining interest and continued to co-own the mark.

A co-owner ordinarily cannot be liable to another co-owner for using a jointly owned mark, and a third party authorized by a co-owner likewise is not liable for infringement. *Reed v. Marshall*, 142 F.4th 338, 345–48 (5th Cir. 2025); *Piccari v. GTLO Productions, LLC*, 115 F. Supp. 3d 509, 514–15 (E.D. Pa. 2015). The Complaint alleges that Nana controls 1221 and directed and encouraged the challenged use. (Compl. ¶ 116.) For purposes of this alternative argument, Defendants accept Plaintiffs' allegation that Nana directed 1221's use. If that allegation is sufficient to attribute 1221's use to Nana, it establishes use authorized by a co-owner; if it is insufficient, it cannot support Nana's personal liability. *See infra* § IV(A)(8). Thus, if Plaintiffs acquired fractional interests in a mark Nana personally owned, they cannot maintain an infringement claim against Nana or 1221 for use he authorized.

**3. Plaintiffs cannot rescue the trademark claims by recasting them as derivative.**

Plaintiffs cannot recast the Second and Third Individual Claims as derivative because no pre-suit demand asked Spice to pursue infringement or misuse of its name, branding, or goodwill. Because the alleged mark and goodwill belong to Spice, any claim arising from their unauthorized use also belongs to Spice. N.C. Gen. Stat. § 57D-2-01(a); (Compl. Ex. 1 § 14.4.) Plaintiffs therefore

could only pursue that claim, if at all, only derivatively on Spice's behalf. The Second and Third Individual Claims, however, are expressly pleaded as individual claims.

Nor did Plaintiffs satisfy the prerequisite for a derivative trademark claim. Section 57D-8-01(a)(2) requires a written demand that the LLC take suitable action before a member sues on its behalf. Plaintiffs' demands addressed the Baptiste transaction and the Atakoras' removal; neither asked Spice to investigate or pursue infringement or misuse of its name, branding, or goodwill. (Compl. Exs. 3, 6.) The Second and Third Individual Claims, therefore, fail as pleaded and cannot be preserved as derivative claims.

### 4. Plaintiffs allege no injury to their own commercial sales or reputation.

Plaintiffs do not satisfy *Lexmark* because they allege no injury to their own sales or commercial reputation, only injury to Spice that may indirectly diminish their membership interests. Although *Lexmark* does not require the plaintiff and defendant to be competitors, it requires injury to the plaintiff's own commercial interest in sales or reputation. *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–34 (2014). Neither Plaintiff allegedly operates a restaurant, uses or licenses the mark, or possesses a commercial reputation associated with it. Plaintiffs instead allege that negative Atlanta reviews may diminish goodwill "associated with Spice." (Compl. ¶ 134.) That injury belongs to Spice. Any resulting reduction in Plaintiffs' distributions or membership value is derivative of Spice's injury and does not satisfy *Lexmark*.

### 5. The Complaint does not plausibly plead a protectable unregistered word mark.

The Complaint pleads no facts showing that "Spice" is inherently distinctive or has acquired secondary meaning. An unregistered mark is protectable only if it is inherently distinctive or has acquired secondary meaning; generic terms are never protectable. *George & Co. LLC v.*

*Imagination Entertainment Ltd.*, 575 F.3d 383, 393–96 (4th Cir. 2009); *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002). Plaintiffs allege that the claimed mark is "distinctive," but that legal conclusion is unsupported by facts showing either inherent distinctiveness or acquired secondary meaning. (Compl. ¶ 117.) Plaintiffs' Complaint alleges no supporting facts concerning advertising, sales, media coverage, consumer studies, or exclusive use. Plaintiffs' use since 2023 and generalized internet presence do not plausibly establish secondary meaning for "Spice" as a restaurant mark.

### 6. The Third Individual Claim pleads no independent false-advertising claim.

The Third Individual Claim does not state an independent false-advertising claim because it merely repeats the Second Individual Claim's false-association theory and identifies neither a distinct false statement nor commercial advertising or promotion. Section 1125(a)(1)(A) governs false association, while § 1125(a)(1)(B) governs false statements in commercial advertising concerning goods, services, or commercial activities. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706, 712 (4th Cir. 2016). The Third Individual Claim cites subsection (A) and alleges only that Defendants implied an affiliation or franchise relationship. (Compl. ¶¶ 129–36.) That duplicates the Second Individual Claim's false-association theory. Because the Third Individual Claim identifies no separate false statement concerning either restaurant's services and no dissemination through commercial advertising or promotion, it does not state an independent false-advertising claim.

### 7. Any surviving Lanham Act claim is limited to the territory in which Spice has priority.

Any surviving claim must be geographically limited because Plaintiffs allege no federal registration and no facts establishing priority in Georgia. Because Plaintiffs allege no federal

registration, any trademark rights depend on common-law priority, which ordinarily extends only to the territory of actual use and natural expansion. *Spartan Food Systems, Inc. v. HFS Corp.*, 813 F.2d 1279, 1282–83 (4th Cir. 1987). The Complaint alleges a Charlotte restaurant and generalized internet presence but no Georgia sales, customers, advertising penetration, or reputation predating the Atlanta restaurant. Any surviving claim should therefore be limited to the territory in which Spice proves priority.

### 8. The conclusory allegations do not establish personal liability of either Atakora.

The claims against Nana and Baffour individually fail because the Complaint relies on a collective, formulaic allegation and identifies no act showing that either Atakora actively and knowingly caused the alleged infringement. A corporate officer may be personally liable if he "actively and knowingly caused" the alleged infringement. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987); *see also MC1 Healthcare LLC v. Mountainside Solutions, Inc.*, No. 1:18-cv-00315-MR, 2020 WL 1923159, at *13–14 (W.D.N.C. Apr. 21, 2020). The Complaint alleges collectively that Nana and Baffour controlled 1221 and "directed, guided, and participated" in the infringement. (Compl. ¶ 116.) It identifies no act by either individual, such as selecting the name, authorizing a publication, or making a representation. This formulaic group allegation does not plausibly establish that both Nana and Baffour actively and knowingly caused the alleged infringement. Therefore, Defendants respectfully request that the Lanham Act claims be dismissed against the Atakoras individually.

For the reasons set forth in §§ IV(A )(1)–(8),Defendants respectfully request that the Court dismiss all Lanham Act claims.

## B. <u>The Court Should Decline Supplemental Jurisdiction.</u>

Once the two Lanham Act claims are dismissed, the absence of any remaining federal claim and the early posture of this case favor dismissal of the state law claims without prejudice.

Plaintiffs' Lanham Act claims are the sole basis for original jurisdiction; the Parties are not diverse, and the Complaint invokes no other federal law. Once the Second and Third Individual Claims are dismissed, 28 U.S.C. § 1367(c)(3) permits the Court to decline supplemental jurisdiction. The ordinary rule favors dismissal of state claims when federal claims disappear before trial. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir. 1995). This case is only at the pleading stage, and once the two Lanham Act claims are dismissed, the remaining questions are those of North Carolina law. Judicial economy, comity, convenience, and fairness favor dismissal. This disposition resolves the entire Complaint. Accordingly, Defendants respectfully request that the Court decline to exercise supplemental jurisdiction over the state law claims.

### C. <u>Alternatively, the Derivative Claims should be Dismissed or Narrowed.</u>

#### 1. The Complaint is not verified.

If the Court reaches the state law claims, the derivative claims are procedurally defective because Rule 23.1(b) requires a verified complaint, but neither Plaintiff verified this pleading. If the Court reaches the state law claims, Plaintiffs' derivative claims are procedurally defective because Rule 23.1(b) requires a verified derivative complaint, yet neither Plaintiff verified this Complaint. The present Complaint is signed only by counsel and contains no verification by either Plaintiff. Therefore, Defendants respectfully request that the Court dismiss the six counts labeled derivative or, in the alternative, require Plaintiffs to file a properly verified amended pleading.

#### 2. The Declaratory Judgment claim should be dismissed to the extent it asks the Court to readjust Spice's membership interests because this claim is not derivative and is not authorized by substantive law.

If the Court reaches the state law claims, Plaintiffs' requested ownership reallocation fails because it seeks individual rather than derivative relief, contradicts their allegations concerning

the Baptiste repurchase, and is not authorized by substantive law. A derivative action enforces an LLC's rights and seeks a judgment in its favor. N.C. Gen. Stat. § 57D-8-01(b); *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658–59 (1997). Plaintiffs, however, ask the Court to increase the remaining Members' individual ownership percentages rather than award the disputed interest or other relief to Spice. (Compl. ¶ 85.) That requested relief is personal to Plaintiffs, not derivative relief belonging to Spice.

Plaintiffs allege that 1221 repurchased Baptiste's interest using Spice's funds and that the repurchase was unauthorized and invalid. (Compl. ¶¶ 53–55.) If true, Spice may have a derivative claim to recover the misappropriated funds. But supplying the purchase money does not make Spice the purchaser, transfer the interest to Spice, or enlarge Plaintiffs' ownership percentages. Plaintiffs allege no facts showing that title passed to Spice and no basis for treating an allegedly invalid purchase by 1221 as a valid acquisition by Spice.

The Declaratory Judgment Act permits a court to declare existing rights; it does not create new ones. *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011). Plaintiffs identify no provision of the Operating Agreement, Chapter 57D, or other law under which the use of Spice's funds made Spice the purchaser or increased the remaining Members' ownership percentages. The second requested declaration in the First Derivative Cause of Action should therefore be dismissed.

### 3. The Second Derivative Cause of Action should be dismissed as pleaded because § 57D-3-04 inspection rights belong to the individual member, not the LLC itself

If the Court reaches the state law claims, the Second Derivative Cause of Action is not derivative because the asserted information rights belong directly to Plaintiffs, and the requested relief would benefit Plaintiffs rather than Spice. A derivative action enforces a right belonging to the LLC and seeks a judgment in its favor. N.C. Gen. Stat. § 57D-8-01(b). The Second Derivative

Cause of Action does neither. Section 57D-3-04 gives an interest owner the direct right to obtain specified information from the LLC. *Id.* § 57D-3-04(a). Section 4.7.3 of the Operating Agreement likewise requires the Managers to make Spice's books and records available to a Member for a purpose reasonably related to its membership interest. These rights belong to the requesting Members, not to Spice.

The Complaint confirms the point. Plaintiffs allege that they are entitled to the requested information and seek an order requiring its production to them. (Compl. ¶¶ 87–89.) The Second Derivative Cause of Action therefore asserts Plaintiffs' individual rights, notwithstanding its designation as the "Second Derivative Cause of Action." Therefore, Defendants respectfully request that the Court dismiss Plaintiffs' Second Derivative Cause of Action, for violation of LLC inspection rights, as pleaded, or in the alternative, to require Plaintiff to file this claim as an individual claim and to Plaintiffs' request to only those categories of documents actually required by §57D-3-04.

### 4. The Third Derivative Cause of Action fails as to 1221 Hospitality because it owed no fiduciary duty to Spice.

If the Court reaches the state law claims, the Third Derivative Cause of Action fails as to 1221 because LLC membership alone creates no fiduciary duty to the company, the Operating Agreement vested management authority in the Atakoras, and the controlling-member doctrine concerns duties owed to minority members rather than the duty to Spice alleged here. North Carolina does not impose fiduciary duties on an LLC member merely because it is a member. *Kaplan v. O.K. Technologies, L.L.C.*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). Chapter 57D instead imposes duties to the LLC on Managers and other company officials exercising management authority. N.C. Gen. Stat. §§ 57D-1-03(5), 57D-3-21, 57D-3-23.

Plaintiffs allege that Nana and Baffour were Spice's Managers and exercised the management authority underlying the alleged misconduct. (Compl. ¶¶ 15–20, 22–44, 53–60.) They do not allege that 1221 served as a Manager or otherwise exercised management authority over Spice. Paragraph 91's conclusory assertion that 1221 owed Spice fiduciary duties does not supply those missing facts.

Nor does 1221's 79% majority interest alone establish the alleged duty where the Operating Agreement assigns management authority to the Managers. *Strategic Management Decisions, LLC v. Sales Performance International, LLC*, 2017 NCBC 68, ¶¶ 28–32; *Gvest Real Estate, LLC v. JS Real Estate Investments, LLC*, 388 N.C. 563, 573–75 (2025). Although a controlling member may owe fiduciary duties directly to *minority members*, the Third Derivative Cause of Action is derivative and alleges a duty owed to *Spice*. *See Wright v. LoRusso*, 2023 NCBC 64, ¶¶ 29–33. Because Plaintiffs do not plausibly allege that 1221 was a Manager, exercised management authority, or otherwise owed a fiduciary duty to Spice, Defendants respectfully request that the Court dismiss the Third Derivative Cause of Action in its entirety or require an amendment to plead this cause of action individually and dismiss this claim against 1221 Hospitality.

### 5. The Fourth Derivative Cause of Action is barred by intra-corporate immunity.

If the Court reaches the state law claims, the Fourth Derivative Cause of Action fails as to the Baptiste transactions because Plaintiffs allege a conspiracy only between 1221 and the Atakoras acting on its behalf and plead no independent personal stake that would avoid intra-corporate immunity. Civil conspiracy requires an agreement among two or more legally distinct actors. *Piraino Bros., LLC v. Atlantic Financial Group, Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011). An entity therefore cannot conspire with its agents acting within the scope of their agency because doing so would be "tantamount to accusing a corporation of conspiring with

itself." *State ex rel. Cooper v. Ridgeway Brands Manufacturing, LLC*, 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007), aff'd in part and rev'd in part on other grounds, 362 N.C. 431, 666 S.E.2d 107 (2008); *see also Ehmann v. Medflow, Inc.*, 2022 NCBC 55, ¶ 69.

Plaintiffs allege that the Atakoras and 1221 agreed to misappropriate Spice's funds to repurchase 1221's interest. (Compl. ¶ 96.) They further allege that the Atakoras acted "on behalf of 1221 Hospitality" and that the transaction benefited "1221 Hospitality alone." (Compl. ¶¶ 92, 101.) Those allegations describe 1221 acting through its agents for its own benefit, not an agreement among independent actors. *See Ehmann*, 2022 NCBC 55, ¶¶ 68–75.

The independent-personal-stake exception does not save the claim. That exception requires a personal stake "wholly separable" from the entity's benefit. *Ridgeway Brands*, 184 N.C. App. at 626, 646 S.E.2d at 799; *Ehmann*, 2022 NCBC 55, ¶¶ 72–73. Plaintiffs do not allege that either Atakora acquired Baptiste's interest or received the disputed funds. They allege that 1221 received both the interest and the benefit. (Compl. ¶¶ 53–54, 92, 96, 101.) Any indirect benefit the Atakoras received as members of 1221 is inseparable from that corporate benefit.

Because Plaintiffs allege only that 1221 acted through its agents and plead no independent personal stake, Defendants respectfully request that the Court dismiss the Fourth Derivative Cause of Action.

#### 6. The Fifth Derivative Cause of Action for Conversion fails against the Atakoras as to the alleged salary payments and fails entirely against 1221 Hospitality

If the Court reaches the state law claims, the theory that the Atakoras' paying themselves allegedly unauthorized salaries constitutes conversion fails because Plaintiffs identify no specific payment or fund and made no derivative demand concerning any identified post-removal payment; the Baptiste theory fails against 1221 because Plaintiffs do not allege that 1221 possessed or exercised dominion over Spice's money. Conversion of money requires a specific, identifiable

fund over which the defendant exercised unauthorized dominion. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Services, LLC*, 365 N.C. 520, 528–29, 723 S.E.2d 744, 750 (2012).

Plaintiffs allege generally that the Atakoras continued paying themselves salaries after their removal, but identify no particular payment, date, amount, individual recipient, or source account. They therefore identify no specific fund capable of conversion. Nor did they demand that Spice take corrective action concerning any identified post-removal payment.

The Baptiste theory fails against 1221 for a different reason. Plaintiffs allege that Spice funded the repurchase for 1221's benefit, but not that 1221 received, possessed, or exercised dominion over the payment. Merely benefiting from another's use of funds is not conversion.

Therefore, Defendants respectfully request that the Court dismiss the Fifth Derivative Cause of Action against the Atakoras to the extent it concerns post-removal salary payments and dismiss it against 1221 Hospitality in its entirety.

### 7. The Sixth Derivative Cause of Action fails against 1221 Hospitality because Plaintiffs do not allege embezzlement by 1221.

If the Court reaches the state law claims, The Sixth Derivative Cause of Action fails as to 1221 because Plaintiffs do not allege that Spice entrusted property to 1221 through a qualifying relationship or that 1221 misapplied property received through that relationship. Section 1-538.2 requires conduct punishable under § 14-90, which applies when property comes into the defendant's possession or care through a specified fiduciary, agency, or similar relationship. N.C. Gen. Stat. § 14-90(a)(3)–(4). A civil-embezzlement claim therefore requires that the defendant receive the owner's property through such a relationship and knowingly or willfully misapply it. *Sunbelt Rentals, Inc. v. Second Life Equipment, LLC*, No. 5:20-CV-00070-KDB-DSC at *6–7 (W.D.N.C. Mar. 14, 2022).

Plaintiffs allege that the Atakoras obtained access to and control over Spice's funds through their positions as Managers. (Compl. ¶¶ 106–08.) They do not allege that 1221 was a Manager, agent, or fiduciary of Spice; that Spice entrusted funds to 1221; or that 1221 possessed or controlled those funds through a relationship identified in § 14-90.

Alleging that 1221 benefited from the misappropriation does not cure that defect. Plaintiffs allege that the Atakoras controlled Spice's funds and used them to pay Baptiste for 1221's interest. (Compl. ¶¶ 54, 101.) Those allegations make 1221 the alleged beneficiary, not the person entrusted with and misapplying Spice's property. Therefore, Defendants respectfully request that the Court dismiss the Sixth Derivative Cause of Action as to 1221 Hospitality.

### D. The Individual Claims should be Dismissed or Narrowed.

#### 1. The First Individual Claim, for Breach of the Operating Agreement against 1221 Hospitality should be dismissed or narrowed because it conflates injury to Spice, duties imposed on the Managers, and alleged transfer violations causing no identifiable loss.

If the Court reaches the state law claims, the First Individual Claim fails or should be narrowed because the alleged misuse of Spice's funds caused injury to Spice, § 4.6 imposes duties on the Managers rather than 1221, and Plaintiffs identify no compensatory loss from 1221's alleged violations of Article 9 of the Operating Agreement.

First, Plaintiffs allege that Spice's funds were used to repurchase the Baptiste interest in violation of § 4.6. (Compl. ¶ 54.) Any resulting loss belongs to Spice and is derivative, not direct. *See Barger v. McCoy Hillard & Parks*, 346 N.C. 650 (1997). Section 4.6 also governs the Managers' handling of company property and funds; it imposes no corresponding duty on 1221 as a Member. The First Individual Claim therefore fails against 1221 to the extent it rests on that transaction or duties assigned solely to the Managers.

Second, Plaintiffs allege that 1221 violated the Operating Agreement's Article 9's notice, consent, and right-of-first-refusal provisions when transferring portions of its interest. (Compl. ¶¶ 47–55.) But they do not allege that their 10% and 2% interests changed, that they would have exercised the right of first refusal, or that they suffered any other identifiable loss. Their allegation of damages "upon information and belief" in an amount "to be proven at trial" is conclusory. (Compl. ¶ 113.)

Finally, Paragraph 112 of Plaintiffs' Complaint alleges that 1221 breached unspecified additional provisions while incorporating more than one hundred preceding paragraphs. That allegation identifies neither the contractual obligation nor the conduct constituting its breach and does not give 1221 fair notice of any additional theory.

Therefore, Defendants respectfully request that the Court dismiss the First Individual Claim to the extent it rests on injury to Spice or duties imposed solely on the Managers and dismiss any claim for unidentified compensatory damages arising from the alleged violations of Article 9 of the Operating Agreement. (Compl. Ex 1 pp 12-13.) Alternatively, Defendants request that the Court require Plaintiffs to narrow the claim by dismissing any portion that seeks recovery for injury belonging to Spice and any portion that fails to identify a contractual obligation imposed directly on 1221.

#### 2. The Second and Third Individual Claims should be dismissed as discussed in Section IV(A).

#### 3. The Fourth Individual Claim fails to state a claim for unjust enrichment.

If the Court reaches the state law claims, the Fourth Individual Claim nevertheless fails because Plaintiffs conferred no benefit on Defendants, any enrichment from the alleged use of

Spice's assets occurred at Spice's expense, and the MPAs foreclose an implied-contract claim against Nana concerning the same rights.

First, unjust enrichment requires that the plaintiff confer a measurable benefit that the defendant consciously accepts. *JPMorgan Chase Bank, N.A. v. Browning*, 230 N.C. App. 537, 541–42, 750 S.E.2d 555, 559 (2013). A wrongful taking is not a conferral, *Tiller v. Phillips*, 2025 NCBC 63, ¶¶ 122–25, including when the allegedly appropriated property is goodwill, *Klos Construction, Inc. v. Premier Homes & Properties, LLC*, 2020 NCBC 53, ¶¶ 86–90. Plaintiffs allege that Defendants obtained an "improper benefit" through the "unauthorized use" of the Spice mark, trade name, and goodwill. (Compl. ¶¶ 138–40.) That alleges a taking, not a benefit Plaintiffs conferred with an expectation of compensation.

Second, the allegedly exploited mark and goodwill belong to Spice. (Compl. Ex. 1 § 14.4; Compl. ¶¶ 138–39.) Any enrichment from their unauthorized use therefore occurred at Spice's expense and supports, at most, a derivative claim. *See Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658–60, 488 S.E.2d 215, 219–21 (1997). Plaintiffs' conclusory allegation that they personally suffered damages identifies no distinct individual injury. (Compl. ¶ 141.)

Finally, Plaintiffs allege that the MPAs govern the intellectual-property rights underlying this claim and separately sue Nana for breaching those agreements through the same conduct. (Compl. ¶¶ 156–60.) Because an express contract governs the alleged obligation, "the contract governs the claim and the law will not imply a contract." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988).

Therefore, Defendants respectfully request that the Court dismiss Plaintiffs' Fourth Individual Claim, for Unjust Enrichment.

### 4. The Fifth Individual Claim should be dismissed because Plaintiffs do not own the alleged mark, plead an individual injury, or satisfy the derivative-demand requirement for this claim which belongs exclusively to Spice Tapas LLC.

If the Court reaches the state law claims, the Fifth Individual Claim nevertheless fails because Plaintiffs do not own the alleged mark or goodwill, allege no individual injury from their use, and made no pre-suit demand that would permit them to pursue Spice's claim derivatively.

A North Carolina common-law trademark claim requires ownership of a valid, protectable mark, while unfair competition protects a plaintiff's business goodwill from deceptive appropriation. *Duffy v. Camp*, 2022-NCCOA-836, ¶¶ 56-57. As explained above, the Operating Agreement requires Spice's property to be held in Spice's name, and the MPAs conveyed membership interests rather than Spice's assets. (Compl. Ex. 1 § 14.4; Compl. Ex. 2 § 1.1.) Plaintiffs therefore do not own the mark they seek to enforce individually.

Nor do Plaintiffs allege injury to their own business goodwill. No facts in the Complaint indicate that 3 Ventures or MJT Ventures operate a restaurant, use the Spice mark, or possess goodwill associated with it. The alleged confusion and loss of goodwill concern Spice's restaurant and mark. The claim therefore belongs, if at all, to Spice and must be pursued derivatively.

Plaintiffs cannot cure that defect by amendment in this action. Section 57D-8-01(a)(2) requires a written demand before a member commences a derivative action, but neither demand asked Spice to pursue infringement, unfair competition, or misuse of its mark or goodwill. (Compl. Exs. 3, 6.) Because that demand must precede suit, Plaintiffs cannot satisfy the requirement through a new demand and amendment. *Tiller v. Phillips*, 2025 NCBC 63, ¶¶ 79–81.

Therefore, Defendants respectfully request that the Court dismiss Plaintiffs' Fifth Individual Claim for Common Law Trademark Infringement and Unfair Competition.

### 5. The Sixth Individual Claim fails to state a Chapter 75 claim

If the Court reaches the state law claims, the Sixth Individual Claim nevertheless fails because its predicate infringement claims fail, the alleged injury belongs to Spice and was not the subject of a derivative demand, and Plaintiffs allege no concrete connection between the challenged conduct and North Carolina commerce.

First, Plaintiffs expressly base the Sixth Individual Claim on alleged "trademark and trade name infringement and false advertising under the Lanham Act and North Carolina common law." (Compl. ¶ 151.) Those predicate claims fail for the reasons discussed above in §§ IV(A) and IV(D)(4).

Second, the alleged harm concerns Spice's mark, goodwill, and brand. Plaintiffs allege no injury to their own business distinct from Spice's injury. *See Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 654, 488 S.E.2d 215, 217 (1997). Nor can Plaintiffs pursue the claim derivatively in this action. Spice Atlanta allegedly opened after both pre-suit demands, and neither demand asked Spice to pursue the Atlanta trademark or unfair-competition conduct. (Compl. ¶ 61; Compl. Exs. 3, 6.) Plaintiffs therefore did not satisfy N.C. Gen. Stat. § 57D-8-01(a)(2).

Third, Plaintiffs do not plausibly allege deceptive conduct "in or affecting commerce" in North Carolina. The challenged operation and advertising concern a restaurant in Atlanta. Plaintiffs identify no North Carolina consumer who encountered or was confused by the advertising, and their generalized references to "consumers" provide no factual connection to the North Carolina market. (Compl. ¶¶ 150–52.)

Therefore, Defendants respectfully request that the Court dismiss Plaintiffs' Sixth Individual Claim under Chapter 75.

### 6. The Seventh Individual Claim fails because the MPAs do not impose the obligations Plaintiffs allege Nana breached.

If the Court reaches the state law claims, the Seventh Individual Claim nevertheless fails because the MPAs conveyed membership interests rather than Spice's intellectual property, warranted title only to those membership interests, and imposed no continuing restriction on Nana's use of the Spice name. A contract claim requires breach of an actual contractual obligation, *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000), and the agreements attached to the Complaint control over contrary allegations, *Goines v. Valley Community Services Board*, 822 F.3d 159, 166 (4th Cir. 2016).

Section 1.1 defines each purchased "Interest" as 10% or 2% of Nana's "membership interest units in the Company." Section 1.4 transfers Nana's rights "in and to the Interest," including rights associated with Spice's assets. (Compl. Ex. 2 §§ 1.1, 1.4.) The closing assignments likewise convey only the specified membership-interest units and corresponding distribution rights. (Compl. Ex. 2, p. 9–10 §§ 1–3, p. 19–20 §§ 1–3.) Those provisions did not transfer separate title to Spice's assets, which belonged to Spice rather than its interest owners. *See Chafin v. Chafin*, 250 N.C. App. 19, 27, 791 S.E.2d 693, 699 (2016). Nor does either MPA grant Plaintiffs exclusive rights in the Spice mark or prohibit Nana's later use.

Plaintiffs' warranty theory fares no better. Section 3.1(b), entitled "Title to Membership Interests," warrants Nana's title and right to convey the defined Interests. (Compl. Ex. 2, p. 2 § 3.1(b), p. 12 § 3.1(b).) It does not warrant that Nana personally owned or conveyed Spice's intellectual property.

Because Plaintiffs identify no MPA provision breached by Nana's alleged conduct concerning Spice Atlanta, Defendants respectfully request that the Court dismiss Plaintiffs' Seventh Individual Claim for breach of contract.

### E. The jury demand should be stricken to the extent covered by the Membership Interest Purchase Agreement.

If the Court reaches the state law claims, the jury demand should be stricken to the extent the claim at issue is governed by the MPAs. The MPAs' jury waiver covers the Second through Seventh Individual Claims against Nana but not the First Individual Claim against 1221 or the derivative claims belonging to Spice. Each MPA expressly waives jury trial in litigation between the parties enforcing or relating to the agreement, transaction, or resulting relationship, "whether in contract, tort, or otherwise." (Compl. Ex. 2, § 5.12, pp. 6, 16.) The waiver is clear, separately identified, and contained in agreements between business entities. Federal law governs the waiver's enforceability, and federal courts enforce a clear contractual jury waiver entered knowingly and voluntarily. *See Leasing Service Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986).

The Seventh Individual Claim alleges breach of the MPAs. The Second through Sixth Individual Causes of Action against Nana likewise depend on ownership rights Plaintiffs allegedly acquired through those agreements. (Compl. ¶¶ 114–60.) Those claims therefore fall within the waiver. The First Individual Claim against 1221 and the derivative claims do not.

Therefore, pursuant to Rule 39(a)(2), Defendants respectfully request that the Court strike Plaintiffs' jury demand as to the Second through Seventh Individual Causes of Action against Nana.

## V. Conclusion

Defendants request that the Court dismiss the Second and Third Individual Claims with prejudice, and decline supplemental jurisdiction over all remaining state law claims, thereby dismissing the Complaint in its entirety. Alternatively, if the Court retains supplemental jurisdiction over the state law claims, Defendants request dismissal or narrowing of the state law

claims as set forth herein, and an order striking the jury demand to the extent covered by the Membership Interest Purchase Agreement.

This the 21st day of August, 2026,

**Hull & Chandler**

/s/ Elizabeth Vennum
Elizabeth Vennum
NC State Bar No 49747
Hull & Chandler
1009 East Boulevard
Charlotte, NC 28203
Tel: (704) 375-8488
Fax: (704) 375-8487
lvennum@lawyercarolina.com

**Certificate of Service**

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification to the following:

Patrick Spaugh
Philip Mayer
Womble Bond Dickinson LLP
301 South College Street, Suite 3500
Charlotte, NC 28202
Patrick.spaugh@wbd-us.com
phil.mayer@wbd-us.com

This the 21st day of August, 2026,

/s/ Elizabeth Vennum
Elizabeth Vennum
NC State Bar No 49747
Hull & Chandler
1009 East Boulevard
Charlotte, NC 28203
Tel: (704) 375-8488
Fax: (704) 375-8487
lvennum@lawyercarolina.com