**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 3:26-cv-00471**

| | | |
|---|---|---|
| 3 VENTURES, LLC and MJT Ventures LLC, individually and derivatively on behalf of Spice Tapas LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NANA ATAKORA, BAFFOUR ATAKORA, and 1221 Hospitality LLC,<br><br>Defendants,<br><br>v.<br><br>SPICE TAPAS LLC,<br><br>Nominal Defendant. | ) | **VERIFIED AMENDED COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiffs 3 Ventures, LLC ("3 Ventures") and MJT Ventures LLC ("MJT Ventures"), individually and derivatively on behalf of Nominal Defendant Spice Tapas LLC ("Spice"), bring this action against Nana Atakora, Baffour Atakora, 1221 Hospitality LLC ("1221 Hospitality"), and Spice:

## INTRODUCTION

~~Defendants have provided~~Despite Plaintiffs ~~no~~remaining active Members of Spice at all times, repeatedly requesting information about Spice's ~~business~~ operations~~ after January 2025. This is despite Defendants' repeated requests for information,~~, filing a prior lawsuit ~~alleging~~for breach of ~~their~~Plaintiffs' right to information~~ rights~~, and ~~sending~~issuing a demand for ~~inspection~~

~~under~~information N.C. Gen. Stat. § 57D-3-04(d), Defendants refused to provide Plaintiffs any information about Spice's business operations after January 2025. After Plaintiffs filed this action in June 2026, Defendants finally provided Plaintiffs a limited number of documents about Spice's operations, but still refused to provide any documents related to Spice's operations in 2026. Instead of honoring ~~these~~Plaintiffs' simple requests, Defendants continue to flout Plaintiffs' rights as minority members of Spice, operating the company under a shroud of secrecy and with zero oversight. Not only does this violate North Carolina law, it also violates the parties' Operating Agreement~~, which requires, among other things, an annual meeting and submission of a business plan and budget~~.

Rather than focus their attention on Spice in Charlotte, Defendants have directed their attention elsewhere. Specifically, without notice to Plaintiffs, Defendants opened a new restaurant in Atlanta called "Spice Atlanta." This is problematic because (1) the Atakoras and 1221 Hospitality are infringing on Spice's intellectual property rights without authorization, and (2) Nana Atakora previously transferred all of his right, title, and interest in Spice's goodwill, intellectual property, and brand to Plaintiffs. ~~By opening Spice Atlanta, Nana Atakora breached his agreement. And Spice Atlanta and those operating it are currently infringing on Plaintiffs'~~Plaintiffs issued a derivative demand to the Atakoras to stop the misappropriation of Spice's trade secrets and confidential business information, and infringement of Spice's intellectual property~~ rights because they have no right or title to do so~~.

Per usual, the Atakoras ignored this demand. They continue to knowingly breach their fiduciary duties to Spice by continuing to infringe upon its intellectual property rights through their independent venture, Spice Atlanta. Indeed, rather than attempt to protect Spice's mark and

intellectual property, the Atakoras instead argue that "Spice" is not a protectable mark. (Doc. 8, p.8). In other words, they would rather harm Spice for their personal gain in connection with a separate restaurant than act in the best interests of Spice by protecting its intellectual property.

For these reasons and those outlined below, Plaintiffs bring this action to enforce their rights and the rights of Spice.

## PARTIES AND JURISDICTION

1. Plaintiff 3 Ventures is a North Carolina limited liability company with its registered and principal office in Charlotte, North Carolina.

2. Plaintiff MJT Ventures is a North Carolina limited liability company with its registered and principal office in Charlotte, North Carolina.

3. Nana Atakora is a citizen and resident of Charlotte, North Carolina.

4. Baffour Atakora is a citizen and resident of Charlotte, North Carolina.

5. 1221 Hospitality is a North Carolina limited liability company with its registered and principal office in Charlotte, North Carolina. Nana Atakora is the Manager of 1221 Hospitality and he and Baffour Atakora are two of three Members of 1221 Hospitality.

6. Spice is a North Carolina Limited Liability Company with its registered and principal office in Charlotte, North Carolina. Spice has three members: 3 Ventures, MJT Ventures, and 1221 Hospitality.

7. This action arises under federal law, in particular, under the Lanham Act § 43(a) (15 U.S.C. §1125(a)). Accordingly, this Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition cases).

8. This case also arises under the statutory and common law of North Carolina. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims because they arise from, or from part of, the same case or controversy as the federal law claims.

9. This Court has personal jurisdiction over the Defendants and venue is proper here because Defendants are North Carolina citizens who reside in this District.

## FACTUAL BACKGROUND

10. On April 5, 2023, 3 Ventures, MJT Ventures, 1221 Hospitality, and Akhenthians Investments LLC ("Akhenthians") (a former Member of Spice) executed the Operating Agreement of Spice. A true and correct copy of the Operating Agreement is attached as **Exhibit 1**.

11. The Operating Agreement established the following membership interests in Spice: 79% for 1221 Hospitality, 10% for 3 Ventures, ~~10~~9% for Akhenthians, and 2% for MJT Ventures.

12. At all relevant times 3 Ventures has ~~had~~held a 10% membership interest in Spice and MJT Ventures has had a 2% interest in Spice.

~~13.~~ 3 Ventures ~~also~~ made an initial capital contribution of $100,000 to Spice.

13. ~~14.~~ Also on April 5, 2023, Nana Atakora, ~~who at the time was~~then the sole owner of all ~~of Spice's~~ interest in Spice, entered into Membership Purchase Agreements ("MPAs") with 3 Ventures and MJT Ventures under which he "transfer[red] and convey[ed] all of [his] right,

title, and interest in and to [Spice], including the rights and obligations associated with [Spice's] assets including, but not limited to, all of [Spice's] property, inventory, accounts receivable, furniture, fixtures, contracts, goodwill, intellectual property, and the 'Spice Tapas' brand." ~~The conveyance was for 3 Ventures and MJT Ventures respective percentage of interest in Spice that each was acquiring; 10% for 3 Ventures and 2% for MJT Ventures.~~ Nana Atakora further represented and warranted to 3 Ventures and MJT Ventures that he "own[ed] and [had] good and marketable title" and the "full legal right to convey" such interests. True and correct copies of the MPAs are attached as **Exhibit 2**.

14. Section 14.4 of the Operating Agreement provides that all Company property must be titled and held in the name of Spice. The intellectual property that Nana personally owned prior to formation—and transferred through the MPAs—became Company property held in Spice's name. The intellectual property associated with the Spice name, marks, and brand is therefore owned by Spice as an entity, and Plaintiffs hold rights to the protection and value of those assets through their membership interests and the MPAs.

**The Atakoras Mismanage Spice**

15. Nana and Baffour Atakora were appointed initial Managers of Spice for a ten-year term unless they resigned or "are removed from office by majority agreement of the Members."

16. As Managers, the Atakoras must perform all duties reasonably necessary to conduct the business of Spice and they must perform such duties in good faith and in the best interests of the company. Put simply, they owe fiduciary duties to Spice, including duties of loyalty and care.

17. The Atakora's duties as Managers also includes holding at least one meeting per

year. Absent a meeting, they can only take actions through written consents describing the actions they have taken.

18. The Atakoras ~~are~~were also allowed to use Spice's funds as necessary to cover the company's reasonable expenditures.

19. Further, the Atakoras ~~must~~were required to create a plan of operation, setting forth the projected business plans and operations for the period covered by the plan of operation and a budget setting forth the estimated receipts and expenditures of the Company for the period covered by the budget.

20. In addition, the Atakoras ~~must~~were required to maintain Spice's books and records, including the membership schedule, tax returns, financial statements for the three most recent years, minutes of every meeting of the Managers or Members, the plan of operations and budget, and any other information about Spice that would be reasonable to maintain.

21. Finally, the Managers ~~are~~were required to issue distributions to members whenever net revenue exceeds the reserve, which consists of three months of operating expenses.

22. The Atakoras have ~~neglected~~breached their duties.

23. First, they have failed to maintain the books and records of Spice and produce information to which 3 Ventures and MJT Ventures are entitled despite numerous requests.

24. Concerned with the Atakoras' flippant attitude toward Spice's accounting practices and operations, 3 Ventures requested on February 8, 2024, that the Atakoras hire an accountant and bookkeeper to provide better accounting information for the purpose of understanding the "true financial health of Spice & paint a more accurate picture when it's time for owner distributions." 3 Ventures further requested that the Atakoras issue a more detailed

profit and loss statement breaking out expenses and a monthly balance sheet. It also requested that the Atakoras send financial statements in advance of meetings to enable productive meetings about the company's financial health.

25. The Atakoras ignored nearly all of these requests.

26. Indeed, once again on April 4, 2024, 3 Ventures requested that the Atakoras provide detailed audited financial reports from an accountant and monthly financial reports with a balance sheet and profit and loss statement breaking out supporting details and breakdowns.

27. On July 12, 2024, another Member—Akhenthians—joined the fray, requesting that the Atakoras provide financial statements, general ledger since formation, bank statements since formation, detailed profit and loss statements since formation, reconciled balance sheet since formation, invoices and receipts of payments since formation, employee agreements, and breakdown of expense categories in the profit and loss statement. On August 11, 2024, that member reiterated its request after receiving a limited response from the Atakoras.

28. After a meeting with the Atakoras on August 12, 2024, 3 Ventures repeated ~~the~~its request for information on August 13, 2024, and noted that some of this information was easily obtainable through online bank statements. ~~After the Atakoras failed to provide any bank statements before December 2023~~On August 14, 2024, 3 Ventures again requested on August 14, 2024, that they provide all bank statements since entering into the Operating Agreement in April 2023.

29. Inexplicably, the Atakoras responded on August 15, 2024: "With regard to the other requested documents (Bank statements, General ledger, Invoices and/or receipts, Employee agreements etc) we cannot provide them." In so doing, the Atakoras claimed that they provided

more information than their counsel advised them to provide and that the Members are not entitled to these books and records.

30. To the extent that the requested information does not exist, that constitutes a failure of the Atakoras to maintain the books and records of Spice as required under the Operating Agreement.

~~31.~~ To the extent that the information exists and they simply refuse to provide it, that, too, constitutes a breach of the Operating Agreement, along with a violation of 3 Ventures' and MJT Ventures' information rights under N.C. Gen. Stat. § 57D-3-04.

31. ~~32.~~ On January 24, 2025, 3 Ventures and MJT Ventures, through counsel, requested the following information:

- Meeting minutes;
- Bank account statements;
- Credit card statements;
- Communications with Spice's accountant;
- Account login information for any business bank or credit card accounts;
- Contact information for Spice's business banker(s) or any accountant providing services to Spice;
- Account login information for QuickBooks;
- The Membership Purchase Agreement with Louis Baptiste (or the entity controlled by him), the repurchase agreement, and any communications related to same;
- The amount of money distributed from Spice's bank accounts to Nana Atakora, Baffour Atakora, or 1221 Hospitality;
- An explanation for the check to Richard Holder dated December 11, 2023 and in the amount of $20,833.33 and described as "Loan";
- The amount of any "Profits" and the allocation of same under Section 6.1.1 of the Operating Agreement; and,
- All profit and loss statements, balance sheets, projections, budgets, and general ledgers.

This request also constituted a derivative demand for the information. A true and correct copy of the Notice of Breach, Demand for Accounting, and Derivative Demand is attached hereto as

**Exhibit 3.**

32. ~~33.~~ More than six months after the request, the only information that the Atakoras provided was a general ledger for January 1, 2024 through January 31, 2025, an Income Statement for 2024, a Balance Sheet as of January 31, 2025, an Income Statement for January 2025, Spice's 2023 federal tax return, and a few vague scribbled "meeting minutes."

33. ~~34.~~ Notably, the Atakoras' "meeting minutes" from July 10, 2024, stated:




34. ~~35.~~ Yet as discussed above, the Atakoras ended up refusing to provide the requested statements.

~~36. The Atakoras have not held a meeting since October 2024 or otherwise provided written notice of any actions taken in the absence of a meeting.~~

~~37. Nor have the Atakoras provided any plan of operation or budget since before 2025, as required under the Operating Agreement.~~

35. ~~38.~~ Even the information the Atakoras bothered to provide is inconsistent. As an example, the March 2024 unaudited income statement sent in April 2024 does not match the

March column in the Income Statement for 2024 provided in March 2025.

39. The Atakoras have provided 3 Ventures and MJT Ventures no information about Spice's operations after January 2025.

36. On March 9, 2026, Plaintiffs issued a Notice of Exercise of Inspection Rights under N.C. Gen Stat. § 57D-3-04 and Section 4.7.3 of the Operating Agreement to Nana and Baffour Atakora and Spice. A true and correct copy of this notice is attached as **Exhibit 4**. The notice requested documents that Plaintiffs are entitled to obtain under North Carolina law and the Operating Agreement. On March 17, 2026, Spice, through counsel, objected to the Notice. A true and correct copy of Spice's objection to the notice is attached as **Exhibit 5.**

37. After alleging in the initial Complaint that the Atakoras had not held a meeting since October 2024 or provided any plan of operation or budget since before 2025, in August 2026 the Atakoras conveniently produced purported plans of operation for 2025 and 2026 and "Manager Meeting Minutes" for one meeting each in 2024, 2025, and 2026. Notably, the Atakoras provided no notice of these meetings and no notice of the purported plans to Plaintiffs. Plaintiffs had no idea these documents existed until they were provided in response to this litigation. Moreover, the Atakoras have still failed to provide any information about Spice's operations since January 2026.

38. 40. Upon information and belief, the Atakoras are withholding the requested information to which the Members are entitled to conceal the Atakoras' wrongdoing and mismanagement of Spice.

39. 41. Concerningly, the Atakoras have never issued a single distribution to 3 Ventures or MJT Ventures since in the more than 2three years since theyPlaintiffs became

Members, despite the Operating Agreement's requirement that distributions be made whenever net revenue exceeds the reserve.

42. Yet they have been paying themselves Management salaries that fluctuate every month and were as much as $29,192.31 combined in August 2024.

40. Yet, upon information and belief, the Atakoras have received unauthorized payments from Spice without notice to Plaintiffs or Plaintiffs' approval.

41. 43. Despite not issuing any distributions, the balance sheet the Atakoras provided for January 2025 showed $213,141 in cash assets. Back in February 2024, 3 Ventures requested that the Atakoras "solidify the number of reserves needed before distributions." They again failed to do so.

44. On March 9, 2026, Plaintiffs issued a Notice of Exercise of Inspection Rights under N.C. Gen Stat. § 57D-3-04 and Section 4.7.3 of the Operating Agreement to Nana and Baffour Atakora and Spice. A true and correct copy of this notice is attached as **Exhibit 4**. The notice requested documents that Plaintiffs are entitled to obtain under North Carolina law and the Operating Agreement. On March 17, 2026, Spice, through counsel, objected to the Notice and has not provided a single requested document. A true and correct copy of Spice's objection to the notice is attached as **Exhibit 5**.

**1221 Hospitality Transfers Its Membership Interest Without Notice, And Then The Atakoras Misappropriate Spice's Money To Buyback 1221 Hospitality's Interest**

42. 45. Articles 3, 9 and 10 of the Operating Agreement establish limitations on the admission of new Members. Under those provisions, no Member shall have the right to voluntarily transfer its Membership Interest unless (a) the Managers deliver written notice to the

Members, including the purchase price paid for the Membership Interest and the transferee's agreement to comply with the Operating Agreement, and (b) the remaining Members representing a majority of the interests in Spice (other than the interests of members involved in the transfer) consent to the transfer. Before selling its interest, the selling Member must also provide the other Members 30 days in which to match the purchase offer identified in the written notice.

43. 46. As with their management duties, the Atakoras ignored these clear restrictions.

44. 47. Through a Membership Interest Purchase Agreement with an effective date of September 15, 2023, 1221 Hospitality sold 6.6% of its membership interest in Spice to Baptiste Consulting LLC, and 3.4% of its membership interest in Spice to Akhenthians for a purchase price of $75,000.

45. 48. No notice of this potential transfer was provided to 3 Ventures and MJT Ventures until after the transfer had already been completed.

46. 49. By breaching the Operating Agreement and failing to provide notice to 3 Ventures and MJT Ventures, the Atakoras (who are Members of 1221 Hospitality and Nana Atakora is its Manager) deprived 3 Ventures and MJT Ventures of their right of first refusal.

47. 50. The transfer was also invalid and unauthorized because 1221 Hospitality failed to obtain the consent of the majority of the other Members—3 Ventures and MJT Ventures. Absent their consent, there was no majority of interest in Spice (excluding the interest held by 1221 Hospitality, the transferor, and Akhenthians, the transferee) who could have consented to the transfer because 3 Ventures and MJT Ventures comprised the full remaining

membership interests.

48. ~~51.~~ Notably, the unauthorized transfer occurred mere weeks after the Atakoras told 3 Ventures that they needed more money, resulting in 3 Ventures issuing a $125,000 loan to Spice on August 28, 2023.

49. ~~52.~~ Even after the unauthorized transfer, the Atakoras failed to update the Membership Schedule as they were required to do as part of their books and records obligation. Moreover, Spice's Annual Report filed with the North Carolina Secretary of State in 2024 failed to identify Baptiste Consulting LLC as a Member.

50. ~~53.~~ After the Atakoras failed to provide the information requested by Baptiste Consulting LLC in the summer of 2024, a dispute arose between them. The Atakoras resolved the dispute by having 1221 Hospitality buy back its membership interest from Baptiste Consulting LLC.

51. Through a second Membership Interest Purchase Agreement with an effective date of September 16, 2024, 1221 Hospitality repurchased 2.5% of the membership interest previously transferred to Baptiste Consulting LLC and Akhenthians Investments LLC for $40,000. This second transfer was also unauthorized and invalid under the Operating Agreement for the same reasons as the first transfer. No notice was provided to 3 Ventures or MJT Ventures, no consent was sought, and Plaintiffs had no opportunity to exercise their right of first refusal.

52. Through a Membership Purchase and Assignment Agreement dated December 18, 2024, and related assignments dated December 19, 2024, 1221 purchased the remaining 16.5% membership interest held by Baptiste Consulting LLC and Akhenthians Investments LLC for $135,000 ($110,000 at closing and a $25,000 promissory note). This third transfer was also

unauthorized and invalid under the Operating Agreement for the same reasons as the first two transfers. No notice was provided to 3 Ventures or MJT Ventures, no consent was sought, and Plaintiffs had no opportunity to exercise their right of first refusal.

53. 54. Rather than use 1221 Hospitality's's own funds to buy back itsrepurchase these membership interest,interests, 1221 Hospitality—acting through the Atakoras—misappropriated Spice's funds to pay Baptiste Consulting LLC for the repurchase of 1221 Hospitality'sthe membership interestinterests. This misappropriation constitutes conversion, a breach of Section 4.6 of the Operating Agreement, a breach of the Atakoras' and 1221 Hospitality's fiduciary duties to Spice under the Operating Agreement and N.C. Gen. Stat. § 57D-3-21, and embezzlement under N.C. Gen. Stat. § 14-90.

55. On top of the misappropriation, this second transfer of Membership Interests was unauthorized and invalid under the Operating Agreement, and breached the Operating Agreement for the same reasons as the first transfer. No notice was provided to 3 Ventures or MJT Ventures until after the transfer had been completed. So 3 Ventures and MJT Ventures had no opportunity to exercise their right of first refusal. Likewise, they were unable to vote on whether to approve the transfer, and their consent was required for the transfer to be valid.

54. 56. Plaintiffs issued a derivative demand addressing these and other issues on March 9, 2026. A true and correct copy of the derivative demand is attached as **Exhibit 6**. Defendants failed to respond to the derivative demand and have taken no action to address the issues raised in the derivative demand. Thus, Plaintiffs have standing to bring its derivative claims.

**The Atakoras Are Removed As Managers**

55. 57. Section 4.2 of the Operating Agreement provides that the Managers can be "removed from office by majority agreement of the Members."

56. 58. On November 19, 2025, 3 Ventures, MJT Ventures—comprising a majority (two out of three) of the remaining Members—voted to remove the Atakoras as Managers of Spice. A true and correct copy of this action is attached hereto as **Exhibit 7**.

57. 59. The Atakoras and 1221 Hospitality dispute the validity of their removal and have continued to operate Spice as Managers despite no longer being authorized to do so.

58. 60. By continuing to use Spice's funds without authorization since the vote to remove them, including paying themselves salaries, the Atakoras have misappropriated Spice's funds and continue to do so.

**Defendants1221 Hospitality and the Atakoras Infringe on Plaintiffs' and Spice's Intellectual Property Rights**

59. 61. On May 1, 2026, 1221 Hospitality, acting through the Atakoras, opened Spice Atlanta.

60. 62. Under Section 1.4 of the MPAs, Nana Atakora previously transferred 10% to 3 Ventures and 2% to MJT of all right, title, and interest in and to Spice, including the rights and obligations associated with Spice's assets including, but not limited to, all of Spice's property, inventory, accounts receivable, furniture, fixtures, contracts, goodwill, intellectual property, and the 'Spice Tapas' brand. Exhibit 2, § 1.4.

61. Under Section 14.4 of the Operating Agreement, Spice owns the intellectual property associated with the Spice name, mark, and brand.

62. Under the MPAs, Plaintiffs also have ownership interest in and a right to Spice's

intellectual property.

63. As a result of this transfer, Plaintiffs own an interest in1221 Hospitality and the Atakoras do not own Spice's goodwill, intellectual property, and brand. Nor are they authorized to use Spice's intellectual property.

64. Yet without Plaintiffs' authorization, Defendants1221 Hospitality and the Atakoras have used Spice's goodwill, intellectual property, and brand to create and open Spice Atlanta.

65. Unlike the traditional franchise model, Defendants did not license Spice's goodwill, intellectual property, or brand, or otherwise enter into a franchise agreement.

66. Indeed, Defendants did not even contact Plaintiffs about Spice Atlanta or otherwise ask permission to use Spice's goodwill, intellectual property, or brand.

67. Defendants and Spice Atlanta are therefore actively infringing on Plaintiffs' and Spice's intellectual property rights. They are also engaging in unfair competition and unfair and deceptive trade practices.

68. Defendants' carbon copy of Spice's blueprint is blatant and most obvious when examining the two websites.

69. Spice's website is www.spicecharlotte.com. Spice Atlanta's website is www.spiceatl.com.

70. The footer on each website is identical:




71. Nothing in Spice's Operating Agreement establishes it as a "1221 Hospitality concept." Nor has Spice or Plaintiffs authorized 1221 Hospitality to advertise Spice as "1221 Hospitality's concept."

72. Moreover, to the extent that Spice's website is protected by a registered copyright (and Plaintiffs found no relevant copyright registration), Spice and Plaintiffs—not Defendants—own the copyright over Spice's website and Defendants are infringing on such copyright.

73. The "About Us" page on each website is identical, except for replacing Charlotte with Atlanta and changing two pictures:

~~www.spicecharlotte.com/about-us~~



[1]

~~www.spiceatl.com/about-us#intro~~

[1] www.spicecharlotte.com/about-us



[2]

74. These images also show that Spice and Spice Atlanta are using the exact same font for exterior signage:

[2] www.spiceatl.com/about-us#intro







75. The Cocktails menus are identical, from the names and ingredients to the order of

the list and the prices:

~~www.spicecharlotte.com/menu~~



[3]

~~www.spiceatl.com/menu~~

[3] www.spicecharlotte.com/menu



[4]

76. The majority of the other menu items are also identical and priced the same.

77. The "Careers" page on each website is identical:

~~www.spicecharlotte.com/careers~~

[4] **www.spiceatl.com/menu**


Careers: Join Spice Charlotte Exciti
https://www.spicecharlotte.com/careers
MENUS
FAQ
SPICE
ABOUT US
CAREERS
CONTACT
JOIN OUR TEAM
APPLY NOW
JOIN US
Welcome to 1221 Hospitality
At our core, we are driven by adventure, excellence, and the desire to create transformative experiences. Our mission is to craft refined culinary journeys that engage the senses and leave lasting impressions. We believe in organic design and know that the smallest details make the biggest difference, shaping an unforgettable experience.
Our team reflects this spirit of discovery and dedication, with a sharp focus on attention to detail at every step. We're looking for passionate individuals who thrive in dynamic environments, are committed to precision, and consistently aim to exceed expectations. Whether you're a seasoned professional or just beginning your journey, if you are ready to learn, grow, and help others shine, we want to meet you.
If you're eager to embark on a journey that celebrates the art of luxury hospitality and driven to craft extraordinary moments, we invite you to explore our career opportunities and grow with us.

5

~~www.spiceatl.com/careers~~

5 **www.spicecharlotte.com/careers**
6 **www.spiceatl.com/careers**



[6]

[6] www.spiceatl.com/careers

78. The social media pages for Spice and Spice Atlanta are also nearly identical:




[7]

~~www.facebook.com/spice.charlotte~~




[8]

~~www.facebook.com/atl.spice/~~

79. As illustrated above, Defendants replicated Spice's intellectual property, goodwill, and brand in creating Spice Atlanta. They did so without authorization. And Defendants continue to infringe on Spice's and Plaintiffs' intellectual property rights each day that Spice Atlanta remains open.

80. The "Spice" name is Spice's trade name and a distinctive service mark used in interstate commerce in connection with restaurant services. Spice has used the mark

[7] www.facebook.com/spice.charlotte
[8] www.facebook.com/atl.spice/

continuously since its opening in 2023 on all signage, social media, its website (www.spicecharlotte.com), and all other advertising. Consumers associate "Spice" with the Charlotte restaurant. Spice used the "Spice" mark and trade name for approximately three years before Defendants opened Spice Atlanta.

81. Upon information and belief, the Atakoras personally directed, guided, and participated in the intellectual-property infringement alleged herein. At all relevant times, the Atakoras have controlled 1221 Hospitality and Spice Atlanta, and they are causing 1221 Hospitality and Spice Atlanta to infringe on Spice's intellectual property rights.

82. In the course of operating Spice, the company developed trade secrets as defined by 18 U.S.C. § 1839(3) and N.C. Gen. Stat. § 66-152(3), including but not limited to: (a) proprietary recipes, menu compositions, and menu-pricing methodologies derived from Spice's cost structure and market analysis; (b) vendor and supplier relationships, including the identities of specialized food-product suppliers, negotiated pricing and volume-discount arrangements, and sourcing channels for particular ingredients; (c) operational methods and systems, including kitchen workflow and station organization, employee training protocols and service standards, and hiring criteria and recruitment methodology; (d) financial and strategic business information, including cost structures, revenue projections, profit-and-loss data, and the annual plans of operation described above; and (e) the integrated brand strategy underlying Spice's public-facing identity, including its website architecture, content strategy, social-media marketing approach, and visual-identity system, all of which were developed through sustained investment over approximately three years before Spice Atlanta opened.

83. This information derives independent economic value from not being generally

known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use. The fact that Defendants used this information to replicate Spice's entire business model—rather than independently developing a new restaurant concept—itself demonstrates the competitive value of these trade secrets.

84. Upon information and belief, Spice took reasonable measures to maintain the secrecy of this information.

85. The Atakoras had access to Spice's trade secrets solely by virtue of their positions as Managers, and their access was conditioned on their duties to act in good faith and in the best interests of the company. Without authorization, the Atakoras misappropriated Spice's trade secrets by using them to create and operate Spice Atlanta for the benefit of 1221 Hospitality and themselves. The virtually identical menus, pricing, operational format, and branding at Spice Atlanta—including cocktail menus identical down to the names, ingredients, order, and pricing formulas—demonstrate that Defendants used Spice's trade secrets to replicate Spice's business model wholesale rather than independently developing a competing concept. Because the Atakoras continue to control Spice's operations despite their removal as Managers, Spice's trade secrets remain exposed to ongoing misappropriation, and Spice is unable to take action to protect its own proprietary information.

86. Spice's trade secrets relate to products and services used in, and intended for use in, interstate commerce. Spice sources food products and supplies across state lines, advertises to consumers across state lines via its website and social media, and the misappropriated trade secrets were carried from North Carolina to Georgia for use in Spice Atlanta.

87. Defendants' misappropriation of Spice's trade secrets is willful and malicious.

The Atakoras effectively concealed the development of Spice Atlanta from the minority Members, opened it without notice or authorization, and have continued to operate it using Spice's proprietary information after being removed as Managers.

## DERIVATIVE CLAIMS

88. Plaintiffs bring Counts I through XIII derivatively on behalf of Spice pursuant to Federal Rule of Civil Procedure 23.1 and N.C. Gen. Stat. § 57D-8-01.

89. 3 Ventures has been a Member of Spice at all times relevant to this action and holds a 10% membership interest. MJT Ventures has been a Member of Spice at all times relevant to this action and holds a 2% membership interest.

90. Plaintiffs have made written demands upon Spice to investigate and pursue the derivative claims asserted herein, as required by N.C. Gen. Stat. § 57D-8-01(a)(2).

91. **First Demand.** On January 24, 2025, Plaintiffs, through counsel, delivered a written Notice of Breach, Demand for Accounting, and Derivative Demand to the Atakoras and Spice (the "January 2025 Demand"), demanding that Spice investigate and pursue claims arising from the unauthorized transfer of membership interests, misappropriation of Spice's funds to repurchase 1221's membership interest from Baptiste Consulting LLC and Akhenthians Investments LLC, failure to maintain books and records, and related breaches of fiduciary duty. **Exhibit 3**.

92. **Second Demand.** In March 2026, Plaintiffs delivered a supplemental derivative demand to Spice (the "March 2026 Demand"), reiterating the January 2025 Demand, confirming the removal of the Atakoras as Managers, and further demanding investigation and corrective action with respect to the Baptiste/Akhenthians transactions and the Atakoras' continued

unauthorized management. **Exhibit 6.**

93. **Third Demand.** On June 16, 2026, Plaintiffs, through counsel, issued a further derivative demand, demanding that Spice investigate and pursue claims against the Atakoras and 1221 Hospitality for: (a) trademark and trade-name infringement and false association/false advertising under the Lanham Act; (b) trade-secret misappropriation under both the Defend Trade Secrets Act and the North Carolina Trade Secrets Protection Act; (c) unfair competition; (d) unfair and deceptive trade practices; and (e) breach of fiduciary duty all arising from 1221 Hospitality—acting through the Atakoras—opening and operating Spice Atlanta, and using Spice's name, stylized logo, coordinated brand presentation, proprietary menus, website design, operational methods, and social-media identity without authorization (the "June 2026 Demand"). A true and correct copy of the June 2026 Demand is attached hereto as **Exhibit 8**.

94. More than ninety days have elapsed since issuance of the June 2026 Demand. Spice, acting through the Atakoras and 1221 Hospitality, has taken no action to investigate or pursue the claims identified in any of the three demands. Upon information and belief, because 1221 Hospitality owns an 88% interest in Spice and the Atakoras dispute their removal as Managers and continue to operate Spice as if they retained managerial authority, 1221 Hospitality and the Atakoras do not intend to take any action in response to the derivative demands.

95. Despite Plaintiffs' three written demands spanning more than seventeen months, Defendants have refused to cause Spice to take any corrective action. Plaintiffs have therefore exhausted their demand obligations and are entitled to maintain derivative claims on Spice's behalf.

96. This action is not a collusive action to confer jurisdiction that the Court would otherwise lack. Plaintiffs will fairly and adequately represent the interests of Spice in enforcing the derivative claims asserted herein.

**FIRST DERIVATIVE ~~CAUSE OF ACTION~~CLAIM**
**DECLARATORY JUDGMENT (Against the Atakoras and 1221 Hospitality)**

97. ~~80.~~ The above allegations are realleged and incorporated by reference.

98. ~~81.~~ There is a real, present, and justiciable controversy between the Members, Spice, and the Atakoras about whether the Atakoras have been removed as Managers under the Operating Agreement.

99. ~~82.~~ On behalf of Spice, 3 Ventures and MJT Ventures request a declaratory judgment declaring that the Atakoras have been removed as Managers under Section 4.2 of the Operating Agreement pursuant to the vote of a majority of the Members of Spice.

100. ~~83.~~ There is also a real, present, and justiciable controversy between 3 Ventures, MJT Ventures, Spice, and 1221 Hospitality about whether the repurchased membership interest from Baptiste Consulting LLC ~~are~~is owned by Spice or 1221 Hospitality.

101. ~~84.~~ Because Spice's funds were used to purchase Baptiste Consulting LLC's membership interest, ~~3 Ventures and MJT Ventures contends~~Plaintiffs contend that Spice rather than 1221 Hospitality repurchased the 6.6% membership interest of Baptiste Consulting LLC, thereby increasing the relative membership interest of the remaining members. 1221 Hospitality disagrees.

102. On behalf of Spice, Plaintiffs request a declaratory judgment declaring that Spice purchased the 6.6% membership interest of Baptiste Consulting LLC and that the remaining

Members' membership interest will be adjusted proportionately to reflect that purchase by Spice. Likewise, to the extent that any Spice funds were used to repurchase the membership interests of Akhenthians Investments LLC, Plaintiffs request a declaratory judgment that Spice—not 1221—is the purchaser of that interest, with proportionate adjustment of all remaining Members' interests.

85. 3 Ventures and MJT Ventures request a declaratory judgment declaring that Spice purchased the 6.6% membership interest of Batiste Consulting LLC and that the remaining Members' membership interest will be adjusted proportionately to reflect that purchase by Spice.

**SECOND DERIVATIVE CAUSE OF ACTIONCLAIM**
**VIOLATION OF N.C. GEN. STAT. § 57D-3-04 (Against the Atakoras)**

86. The above allegations are hereby realleged and incorporated by reference.

87. As outlined above, Spice, through the Atakoras, has refused to provide 3 Ventures and MJT Ventures the information that they are entitled to as Members under N.C. Gen. Stat. § 57D-3-04.

88. 3 Ventures and MJT Ventures provided reasonable notice and requested reasonable information consistent with their information rights.

89. 3 Ventures and MJT Ventures are entitled to an order requiring Spice to provide the information to which they are entitled as Members.

**THIRD DERIVATIVE CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTIES (Against the Atakoras and 1221 Hospitality)**

103. 90. The above allegations are hereby realleged and incorporated by reference.

104. 91. The Atakoras and 1221 Hospitality owe fiduciary duties to Spice.

92. As outlined above, the Atakoras and 1221 Hospitality have breached their fiduciary

duties, including through mismanaging Spice and misappropriating the funds of Spice for the benefit of 1221 Hospitality alone. The Atakoras continued use of Spice's funds without authorization constitutes a further breach of their fiduciary duties and misappropriation.

105. The Atakoras breached their fiduciary duties to Spice by, among other things: (a) misappropriating Spice's funds to repurchase membership interest from Baptiste Consulting LLC and/or Akhenthians Investments LLC on behalf of 1221 Hospitality; (b) misappropriating Spice's intellectual property, trade secrets, goodwill, and brand for the benefit of 1221 Hospitality and Spice Atlanta; (c) upon information and belief, engaging in further misappropriation of Spice's assets; (d) continuing to operate Spice and expend its funds after their removal as Managers; (e) grossly mismanaging Spice and failing to properly account for its assets and expenses in a negligent manner that is not in the best interests of Spice; and (f) as outlined above, acting in the best interests of 1221 Hospitality and themselves, rather than in the best interests of Spice.

106. 93. These breaches ofThe Atakoras breached their fiduciary duties were doneas managers of Spice willfully, knowingly, recklessly, and in conscious disregard toof the best interest of Spice.

107. 94. Upon information and belief, Defendants' breaches of fiduciary duties have caused Spice damages in an amount to be proven at trial.

**FOURTH DERIVATIVE CAUSE OF ACTION**
**CIVIL CONSPIRACY (Against the Atakoras and 1221 Hospitality)**

95. The above allegations are hereby realleged and incorporated by reference.

96. Upon information and belief, the Atakoras and 1221 Hospitality all agreed to perform

unlawful acts, including the misappropriation of Spice's funds to repurchase 1221 Hospitality's membership interest, as alleged above.

97. Defendants are individually liable to Spice for the acts any of them performed in furtherance of their civil conspiracy.

98. Upon information and belief, Defendants' civil conspiracy to perform unlawful acts has caused Spice damages in an amount to be proven at trial.

**FIFTH DERIVATIVE CAUSE OF ACTION**
**CONVERSION (Against the Atakoras and 1221 Hospitality)**

99. The above allegations are hereby realleged and incorporate by reference.

100. Spice owns its bank account.

101. As outlined above, without authorization, the Atakoras, acting on behalf of 1221 Hospitality, converted the funds in Spice's bank account for 1221 Hospitality's use.

102. In so doing, the Atakoras and 1221 Hospitality wrongfully possessed and converted the funds of Spice.

103. Furthermore, since their removal as Managers, the Atakoras have continued to wrongfully possess and convert Spice's funds without authorization, including paying themselves salaries.

104. Upon information and belief, Defendants' conversion has caused Spice damages in an amount in an amount to be proven at trial.

**SIXTH DERIVATIVE CAUSE OF ACTION**
**CIVIL EMBEZZLEMENT (Against the Atakoras and 1221 Hospitality)**

105. The above allegations are hereby realleged and incorporated by reference.

106. By virtue of their prior status as Managers, the Atakoras had and continue to have

access and control of Spice's funds.

107. They fraudulently, or knowingly and willfully, misapplied and converted to their own use as Members and Manager of 1221 Hospitality, funds belonging to Spice.

108. They have also knowingly and willfully converted to their own use funds belonging to Spice by continuing to pay themselves unauthorized salaries after being removed as Managers of Spice.

109. Upon information and belief, Defendants' civil embezzlement has caused Spice damages in an amount in an amount to be proven at trial.

**FIRST INDIVIDUAL CAUSE OF ACTION**
**BREACH OF OPERATING AGREEMENT (Against 1221 Hospitality)**

110. The above allegations are hereby realleged and incorporated by reference.

111. The Operating Agreement is a valid and binding agreement.

112. As outlined above, 1221 Hospitality breached multiple provisions of the Operating Agreement.

113. Upon information and belief, 1221 Hospitality's breaches of the Operating Agreement have caused 3 Ventures and MJT ventures damages in an amount to be proven at trial.

**SECOND INDIVIDUALTHIRD DERIVATIVE CLAIM**
**UNFAIR COMPETITION – TRADEMARK AND TRADE NAMETRADE-NAME INFRINGEMENT UNDER SECTION 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a) (Against the Atakoras and 1221 Hospitality, Nana Atakora, and Baffour Atakora)**

108. 114. The above allegations are hereby realleged and incorporated by reference.

109. 115. Under the MPAs, Plaintiffs own an interest in Spice'sSpice owns the intellectual property associated with the "Spice" name, marks, and brand, including its trade

name and ~~trademarks~~service marks.

110. ~~116.~~ Spice Atlanta is not a registered entity in North Carolina or Georgia. Spice Atlanta is operated by 1221 Hospitality. Upon information and belief, ~~Nana and Baffour Atakora~~the Atakoras manage Spice Atlanta~~,~~ and knowingly and intentionally directed, guided, and participated in all intellectual property infringement alleged herein. At all relevant times, the Atakoras have controlled 1221 Hospitality and Spice Atlanta. The Atakoras are encouraging 1221 Hospitality and Spice Atlanta to infringe on ~~Plaintiffs' and~~ Spice's intellectual property rights.

111. ~~117.~~ "Spice" is Spice's trade name, which is distinctive and used by the business in interstate commerce.

112. ~~118.~~ "Spice" is also a distinctive service mark being used for a genuine commercial purpose as Spice's restaurant name. The "Spice" mark includes its stylized use in signage and advertising, including in its website. It is also used for interior signage:



113. ~~119.~~ Spice's restaurant location is in Charlotte, North Carolina, and it is engaged in interstate commerce, including with respect to sourcing food products.

114. ~~120.~~ The "Spice" mark is critical to advertising to the general public and promoting the restaurant in a uniform manner. Based on Spice's concerted advertising and branding efforts, consumers associate "Spice" with its restaurant.

115. ~~121.~~ Since the restaurant's opening in 2023, the "Spice" mark has been used on all signage, social media, Spice's website, and all other interstate advertising to promote the restaurant's name and to establish brand name recognition for all consumers. As an example, it was used to advertise the restaurant for ~~Charlott~~Charlotte Restaurant Week in January 2026:




The mark and trade name have remained in continuous use since its inception.

116. ~~122.~~ Spice used the "Spice" mark and trade name for ~~2.5~~three years before Defendants opened Spice Atlanta and began using the Spice mark and trade name.

117. ~~123.~~ The "Spice" mark and trade name is known and used in North Carolina, South Carolina, and Georgia, including but not limited to, the use of the mark and trade name on its generally accessible website, social media advertising, and restaurant review and booking software (Yelp, OpenTable, etc.).

118. ~~124. Defendants~~1221 Hospitality and the Atakoras are currently using the "Spice"

mark and trade name in commerce with respect to Spice Atlanta, and they are doing so without Spice's and Plaintiffs' authorization.

119. ~~125. Defendants~~1221 Hospitality's and the Atakoras' unauthorized use of the "Spice" mark and trade name is in connection with advertising Spice Atlanta.

120. ~~126. Defendants~~1221 Hospitality's and the Atakoras' unauthorized use of the "Spice" mark and trade name with respect to Spice Atlanta is likely to confuse consumers. Given the same use of the "Spice" mark and trade name, consumers are likely to believe that the restaurants are affiliated or have a franchise relationship when, in fact, they are not affiliated and have no franchise relationship.

121. ~~127. Defendants~~1221 Hospitality's and the Atakoras' unauthorized use of the "Spice" mark and trade name has damaged ~~Plaintiffs~~Spice in an amount to be proven at trial.

122. ~~128. Defendants~~1221 Hospitality and the Atakoras should be enjoined from further unauthorized use of the "Spice" mark and trade name because ~~Defendants'~~their conduct has caused, and is continuing to cause, irreparable injury to ~~Plaintiffs~~Spice, who ~~own~~owns the intellectual property at issue.

**~~THIRD INDIVIDUAL~~FOURTH DERIVATIVE CLAIM**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NORTH CAROLINA COMMON LAW (Against the Atakoras and 1221 Hospitality)**

123. The above allegations are hereby realleged and incorporate by reference.

124. 1221 Hospitality and the Atakoras have misappropriated the "Spice" mark and trade name through their unauthorized use of the mark and trade name in connection with Spice Atlanta, including on signage, websites, social media, and advertising.

125. Upon information and belief, the Atakoras manage Spice Atlanta and knowingly

and intentionally directed, guided, and participated in all intellectual property infringement alleged herein. At all relevant times, the Atakoras have controlled 1221 Hospitality and Spice Atlanta. The Atakoras are encouraging 1221 Hospitality and Spice Atlanta to infringe on Spice's intellectual property rights.

126. 1221 Hospitality and the Atakoras have also engaged in false advertising by representing that Spice Atlanta is affiliated with, authorized by, or part of the same restaurant group as Spice.

127. 1221 Hospitality's and the Atakoras' trademark infringement and unfair competition is likely to cause confusion, mistake, or deception among consumers regarding the relationship between Spice Atlanta and Spice.

128. 1221 Hospitality's and the Atakoras' conduct has been willful, wanton, reckless, and in total disregard of Spice's ownership rights.

129. Unless enjoined, 1221 Hospitality's and the Atakoras' conduct will continue to cause irreparable harm to Spice.

## FIFTH DERIVATIVE CLAIM

**UNFAIR COMPETITION – FALSE ADVERTISING UNDER SECTION 43(a)(1)(~~A~~B) OF THE LANHAM ACT (Against the Atakoras and 1221 Hospitality~~, Nana Atakora, and Baffour Atakora~~)**

130. ~~129.~~ The above allegations are hereby realleged and incorporated by reference.

~~130. Defendants are falsely advertising that Spice Atlanta is affiliated with or has a franchise relationship with Spice.~~

131. In commercial advertising and promotion—including the website spiceatl.com and related social-media pages—1221 Hospitality and the Atakoras have made false or

misleading representations of fact about the nature, characteristics, and qualities of Spice Atlanta's services.

132. As an example, the footer on both spicecharlotte.com and spiceatl.com identifies each restaurant as "a 1221 Hospitality concept," and the "Careers" page on each website displays the heading "Welcome to 1221 Hospitality" with identical text. These representations convey to consumers that Spice and Spice Atlanta are part of a single, authorized multi-location restaurant brand or hospitality concept operated by 1221 Hospitality.

133. 1221 Hospitality's and the Atakoras' representations, along with other representations that falsely represent and advertise that Spice Atlanta is somehow affiliated with or has a franchise relationship with Spice, are false and misleading. Spice's Operating Agreement does not establish Spice as "a 1221 Hospitality concept." 1221 Hospitality has no franchise agreement with Spice, no license to use Spice's brand, and no authorization from Spice or Plaintiffs to represent Spice Atlanta as part of the same restaurant concept as Spice. Spice Atlanta was created without the knowledge or consent of Spice's minority Members. Spice exercises no quality control, management oversight, or operational supervision over Spice Atlanta. The two restaurants do not share management, staffing, food-safety protocols, or quality standards, and no arrangement exists to ensure that one restaurant's standards are maintained by the other.

134. The "1221 Hospitality concept" designation is not vague or exaggerated; it is a specific, verifiable factual claim about the organizational relationship between Spice and Spice Atlanta. Consumers encountering this designation on both websites — alongside identical menus, pricing, branding, website design, and "About Us" content—are likely to interpret it as

meaning that Spice Atlanta is an authorized, quality-controlled extension of Spice. That interpretation is false. 1221 Hospitality's status as Spice's majority member does not make Spice Atlanta an authorized "concept" of Spice, any more than a majority shareholder's separate venture is an authorized venture of the corporation it partly owns.

135. 131. Defendants' misrepresentation is1221 Hospitality's and the Atakoras' misrepresentations are material and is likely to influence customers who are aware of Spice, along with creating the mispereceptionfalse perception that Spice Atlanta is part of a larger and more legitimate restaurant group.

132. These misrepresentations have Defendants' misrepresentation has the likelihood to deceive and doesdo in fact deceive consumers about the relationship (or lack thereof) between Spice Atlanta and Spice. Consumers encountering these representations are likely to believe that Spice Atlanta is an authorized extension of Spice, that the two restaurants share management and quality standards, and that patronizing one is equivalent to patronizing the other.

136. 1221 Hospitality's and the Atakoras' false advertising has caused and continues to cause injury to Spice. Consumer experiences at Spice Atlanta—over which Spice has no control or oversight—are attributed to Spice, harming Spice's goodwill and brand value. As an example, consumers have posted negative reviews and experiences about Spice Atlanta that are indistinguishable from reviews of Spice because of 1221 Hospitality's and the Atakoras' use of the same name and branding:

133. Defendants' misrepresentation about Spice Atlanta is made on the internet and in interstate commerce.

134. Plaintiffs, who own an interest in Spice's goodwill, intellectual property, and brand

~~name, have been and will continue to be injured as a result of the misrepresentation, including by lessening of goodwill associated with Spice based on the lesser established and lesser known Spice Atlanta. As an example, customers will associate negative reviews and experiences like the below with Spice, even though there is no relationship between Spice Atlanta and Spice:~~




~~135. Defendants' false advertising has damaged Plaintiffs in an amount to be proven at~~

trial.

136. Defendants should be enjoined from further false advertising because Defendants' conduct has caused, and is continuing to cause, irreparable injury to Plaintiffs, who own the intellectual property at issue.

137. These negative consumer experiences at Spice Atlanta—including those reflected in publicly available online reviews—are attributed to Spice by consumers who reasonably believe, based on 1221 Hospitality's and the Atakoras' representations, that the two restaurants are part of the same authorized restaurant group. This attribution damages Spice's goodwill and brand reputation in its home market of Charlotte, North Carolina. Spice Atlanta's use of Spice's brand identity to attract customers also diverts business opportunity from Spice because consumers may decline to visit Spice based on negative experiences at Spice Atlanta.

138. 1221 Hospitality and the Atakoras knew that these representations were false and intentionally made them in an effort to deceive consumers.

139. 1221 Hospitality's and the Atakoras' false advertising is in and affecting interstate commerce. The websites and social media pages are publicly accessible nationwide. The false advertisements are encountered by consumers in North Carolina, Georgia, and elsewhere.

140. Upon information and belief, the Atakoras manage Spice Atlanta and knowingly and intentionally directed, guided, and participated in all false advertising alleged herein. At all relevant times, the Atakoras have controlled 1221 Hospitality and Spice Atlanta. The Atakoras are encouraging 1221 Hospitality and Spice Atlanta to engage in the false advertising.

141. As a result of 1221 Hospitality's and the Atakoras' false advertising, Spice has been damaged in an amount to be proven at trial, including actual damages, Defendants' profits

attributable to the false representations, and the costs of this action, pursuant to 15 U.S.C. § 1117(a). Spice is also entitled to injunctive relief under 15 U.S.C. § 1116.

**~~FOURTH INDIVIDUAL~~SIXTH DERIVATIVE CLAIM**
**~~UNJUST ENRICHMENT~~MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 (Against the Atakoras and 1221 Hospitality~~, Nana Atakora, and Baffour Atakora~~)**

142. ~~137.~~ The above allegations are hereby realleged and incorporated by reference.

~~138. Defendants have received an improper benefit from the good will and brand recognition of Spice through their unauthorized use of Plaintiffs' intellectual property, including Spice's mark and trade name.~~

~~139. But for the benefit of the Spice mark and trade name, Defendants would have had to expend considerable time and expense to generate the good will and brand recognition associated with Spice with respect to the opening of Spice Atlanta.~~

~~140. Defendants have been unjustly enriched by retaining this benefit without providing Plaintiffs any payment for the use of their intellectual property.~~

143. As described above, Spice owns trade secrets as defined by 18 U.S.C. § 1839(3).

144. Spice's trade secrets relate to products and services used in, and intended for use in, interstate commerce. Spice sources food products and supplies across state lines, advertises to consumers across state lines, and the misappropriated trade secrets were transported from North Carolina to Georgia.

145. Upon information and belief, Spice takes reasonable measures to maintain the secrecy of its trade secrets, including limiting access to and the distribution of the information. Only a limited amount of Spice's employees have access to Spice's supplier sourcing

information. Only the Atakoras have access to Spice's financial data that underlies the business model and operations. Spice's trade secrets also derive independent economic value from not being generally known or readily ascertainable.

146. The Atakoras acquired knowledge of Spice's trade secrets through their positions as Managers. Their access was conditioned on their managerial duties to act in good faith and in the best interests of Spice. 1221 Hospitality and the Atakoras used Spice's trade secrets in the operation of Spice Atlanta, knowing that the trade secrets were acquired through the Atakoras' fiduciary positions and without Spice's authorization. They misappropriated Spice's trade secrets to create a carbon copy restaurant in Atlanta, and they continue to use the misappropriated trade secrets in furtherance of Spice Atlanta.

147. 1221 Hospitality's and the Atakoras' misappropriation was willful, malicious, and with knowledge that it was unauthorized. Indeed, they have continued the misappropriation despite Plaintiffs' derivative demand notifying them of the wrongful conduct. The Atakoras also concealed the development of Spice Atlanta from Spice's minority Members, opened it without notice or authorization.

148. ~~141.~~ As a result of Defendants' ~~wrongful acts and unjust enrichment, Plaintiffs have~~misappropriation, Spice has suffered and will continue to suffer damages~~.~~ in an amount to be proven at trial. Spice is entitled to damages under 18 U.S.C. § 1836, including actual loss, unjust enrichment, and, in lieu of these measures, a reasonable royalty. Because 1221 Hospitality's and the Atakoras' misappropriation was willful and malicious, Spice is entitled to exemplary damages of up to two times the compensatory award, plus reasonable attorneys' fees, under 18 U.S.C. § 1836.

**FIFTH INDIVIDUALSEVENTH DERIVATIVE CLAIM**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE NORTH CAROLINA TRADE SECRETS PROTECTION ACT, N.C. GEN. STAT. §§ 66-152, et seq.**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NORTH CAROLINA COMMON LAW (Against the Atakoras and 1221 Hospitality, Nana Atakora, and Baffour Atakora)**

149. 142. The above allegations are hereby realleged and incorporated by reference.

150. As outlined above, Spice owns trade secrets as defined by N.C. Gen. Stat. § 66-152(3). This information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use. That 1221 Hospitality and the Atakoras used this information to replicate Spice's entire business model in Atlanta, rather than independently developing a new concept, demonstrates its competitive value.

151. Upon information and belief, Spice took reasonable measures to maintain the secrecy of its trade secrets, including limiting access to Managers and key employees on a need-to-know basis and maintaining the information in confidential internal systems.

152. The Atakoras acquired Spice's trade secrets through their positions as Managers, and their access was conditioned on their duties to act in good faith and in the best interests of Spice. 1221 Hospitality and the Atakoras used and continue to use Spice's trade secrets in operating Spice Atlanta, knowing that the trade secrets were acquired through the Atakoras' fiduciary positions and without Spice's authorization. 1221 Hospitality and the Atakoras misappropriated Spice's trade secrets within the meaning of N.C. Gen. Stat. § 66-152(1) by acquiring them through improper means—using their managerial access for purposes outside the scope of their authority and adverse to Spice's interests—and by disclosing and using them

without Spice's consent in the creation and operation of Spice Atlanta.

153. 1221 Hospitality's and the Atakoras' misappropriation was willful and malicious. The Atakoras concealed the development of Spice Atlanta from Spice's minority Members, opened it without notice or authorization, and continue to use Spice's trade secrets to operate Spice Atlanta after being notified of their wrongful conduct in the June 2026 Demand.

154. As a result of 1221 Hospitality's and the Atakoras' misappropriation, Spice has suffered and will continue to suffer actual damages in an amount to be proven at trial. Spice is entitled to damages under N.C. Gen. Stat. § 66-154, including actual loss and unjust enrichment not duplicative of actual loss, or in lieu thereof a reasonable royalty. Because Defendants' misappropriation was willful and malicious, Spice is entitled to exemplary damages under N.C. Gen. Stat. § 66-154(c).

155. Spice is also entitled to injunctive relief under N.C. Gen. Stat. § 66-154(a) to prevent any actual or threatened continuation of the misappropriation.

143. Defendants have misappropriated the "Spice" mark and trade name through their unauthorized use of the mark and trade name in connection with spice Atlanta.

144. As described above, Defendants have also engaged in false advertising.

145. Defendants' trademark infringement and unfair competition is likely to cause confusion, mistake, or deception amongst consumers.

146. Defendants' conduct has caused and is continuing to cause damage to Plaintiffs.

147. Defendants' conduct has been willful, wanton, reckless, and in total disregard to Plaintiffs' ownership rights.

148. Unless enjoined, Defendants' conduct will continue to cause irreparable harm to

Plaintiffs.

## SIXTH INDIVIDUALEIGHTH DERIVATIVE CLAIM
## UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER N.C. GEN. STAT. § 75-1.1
## (Against the Atakoras and 1221 Hospitality, Nana Atakora, and Baffour Atakora)

156. 149. The above allegations are hereby realleged and incorporated by reference.

157. 150. At all relevant times, Defendants were the Atakoras and 1221 Hospitality have been engaged in commerce in the State of North Carolina and were affecting North Carolina commerce. 1221 Hospitality is a North Carolina limited liability company. Spice is a North Carolina limited liability company that operates a restaurant in Charlotte, North Carolina. The Atakoras are North Carolina residents who managed Spice from Charlotte.

158. The trade secrets, proprietary information, and intellectual property at issue were developed in North Carolina using North Carolina company resources. Defendants' conduct in creating and operating Spice Atlanta directly affects North Carolina commerce because it diverts business opportunity, goodwill, and revenue from a North Carolina company; it causes consumer confusion among North Carolina consumers who encounter Spice Atlanta's website and social media, which are accessible in North Carolina and use branding identical to a Charlotte restaurant, and the conduct is targeted at causing damages to Spice in North Carolina.

159. 151. Defendants1221 Hospitality's and the Atakoras' unlawful activities outlined above, such as trademark and trade name infringement and false advertising under the Lanham Act and North Carolina common law and misappropriation of trade secrets, constitute violations ofunfair and deceptive business practices and violate the North Carolina Unfair and Deceptive Trade Practices Act.

152. Defendants deceptively and confusingly suggest to consumers that Spice authorized

~~Spice Atlanta or that Spice Atlanta is somehow affiliated with Spice when it is not. Defendants' conduct was intended to and did cause confusion among consumers. Defendants' conduct is calculated to deceive the public and constitutes unfair and deceptive business practices.~~

160. The Atakoras orchestrated these unfair and deceptive trade practices through their purported status as Managers of Spice, Members of 1221 Hospitality, and, upon information and belief, managers of Spice Atlanta.

161. ~~153.~~ As a direct and proximate cause of ~~Defendants~~1221 Hospitality's and the Atakoras' unlawful, unfair, and infringing business practices, ~~Defendants have~~Spice has been damaged ~~Plaintiffs and Defendants~~in an amount greater than $75,000, and 1221 Hospitality and the Atakoras have profited unfairly off ~~Plaintiffs' ownership~~their unauthorized use of the Spice mark, good will, and brand name, along with the misappropriation of Spice's trade secrets.

162. ~~154.~~ Pursuant to N.C. Gen. Stat §75-1.1 et seq., Plaintiffs are entitled to treble damages and attorneys' fees for ~~Defendants~~1221 Hospitality's and the Atakoras' unfair and deceptive acts, as well as any other remedies provided under the statute.

**~~SEVENTH INDIVIDUAL~~NINTH DERIVATIVE CLAIM**
**CONVERSION (Against the Atakoras and 1221 Hospitality)**

163. The above allegations are hereby realleged and incorporated by reference.

164. Spice owns its bank accounts and the funds therein.

165. As outlined above, without authorization, the Atakoras, acting on behalf of 1221 Hospitality, converted the funds in Spice's bank account for 1221 Hospitality's use, including to repurchase 1221 Hospitality's membership interest from Baptiste Consulting LLC and/or Akhenthians Investments LLC.

166. In so doing, the Atakoras and 1221 Hospitality wrongfully possessed and converted the funds of Spice.

167. Furthermore, since their removal as Managers, the Atakoras have continued to wrongfully possess and convert Spice's funds without authorization.

168. 1221 Hospitality's and the Atakoras' conversion has caused Spice damages in an amount to be proven at trial.

**TENTH DERIVATIVE CLAIM**
**CIVIL EMBEZZLEMENT, N.C. GEN. STAT. § 14-90 (Against the Atakoras and 1221 Hospitality)**

169. The above allegations are hereby realleged and incorporated by reference.

170. By virtue of their positions as Managers, the Atakoras had access to and control of Spice's funds and financial accounts.

171. The Atakoras fraudulently, or knowingly and willfully, misapplied and converted to their own use, or to the use of 1221 Hospitality, funds belonging to Spice, including by using Spice's funds to repurchase 1221 Hospitality's membership interest from Baptiste Consulting LLC and Akhenthians Investments LLC, and engaging in other unauthorized use of Spice's funds as outlined above.

172. Since their removal as Managers on November 19, 2025, the Atakoras have also continued to knowingly and willfully convert Spice's funds.

173. Defendants' civil embezzlement has caused Spice damages in an amount to be proven at trial.

**ELEVENTH DERIVATIVE CLAIM**
**CIVIL CONSPIRACY (Against the Atakoras and 1221 Hospitality)**

174. The above allegations are hereby realleged and incorporated by reference.

175. Upon information and belief, the Atakoras and 1221 Hospitality all agreed to independently perform the unlawful acts outlined above, including the infringement of Spice's intellectual property and misappropriation of Spice's assets.

176. 1221 Hospitality and the Atakoras are individually liable to Spice for the acts any of them performed in furtherance of their civil conspiracy.

177. Upon information and belief, 1221 Hospitality's and the Atakoras' civil conspiracy to perform unlawful acts has caused Spice damages in an amount to be proven at trial.

**TWELFTH DERIVATIVE CLAIM**
**AIDING AND ABETTING BREACH OF CONTRACTFIDUCIARY DUTY (Against Nana Atakorathe Atakoras and 1221 Hospitality)**

178. 155. The above allegations are hereby realleged and incorporated by reference.
156. Pursuant to the MPAs, Nana Atakora transferred all of his interest in Spice's goodwill, intellectual property, and the Spice brand to Plaintiffs.

179. The Atakoras owe fiduciary duties to Spice. The Atakoras breached their fiduciary duties to Spice.

180. 1221 Hospitality knew that the Atakoras owed fiduciary duties to Spice, and provided substantial assistance for the Atakoras to breach their fiduciary duties.

181. Likewise to the extent that only one Atakora breached his fiduciary duties to Spice, the other Atakora knew that his brother owed fiduciary duties to Spice and provided substantial assistance for his brother to breach his fiduciary duties.

182. As a result of aiding and abetting the breach of fiduciary duties, 1221 Hospitality and each Atakora is individually liable for the breach of fiduciary duties, which damaged Spice in an amount to be proven at trial.

**THIRTEENTH DERIVATIVE CLAIM**
**UNJUST ENRICHMENT (Against the Atakoras and 1221 Hospitality)**

183. The above allegations are hereby realleged and incorporated by reference.

184. The Atakoras and 1221 Hospitality have received an improper benefit from the good will and brand recognition of Spice through their unauthorized use of Spice's intellectual property and misappropriation of Spice's trade secrets, as outlined above.

185. But for the benefit of the Spice mark and trade name, the Atakoras and 1221 Hospitality would have had to expend considerable time and expense to generate the good will and brand recognition associated with Spice with respect to the opening of Spice Atlanta.

186. 1221 Hospitality and the Atakoras have been unjustly enriched by retaining this benefit without providing Spice any payment for the use of their intellectual property.

187. As a result of 1221 Hospitality's and the Atakoras' wrongful acts and unjust enrichment, Spice has suffered and will continue to suffer damages.

**INDIVIDUAL CLAIMS**

**FIRST INDIVIDUAL CLAIM**
**VIOLATION OF VIOLATION OF N.C. GEN. STAT. § 57D-3-04 (Against the Atakoras and Spice)**

188. The above allegations are hereby realleged and incorporated by reference.

189. As Members of Spice, 3 Ventures and MJT Ventures are entitled to inspect Spice's records required to be maintained under N.C. Gen. Stat. § 57D-3-04.

190. As set forth above, Plaintiffs made repeated written requests for books, records, and financial information to which they are entitled as Members. On March 9, 2026, Plaintiffs delivered a written inspection demand under N.C. Gen. Stat. § 57D-3-04 and Section 4.7.3 of the

Operating Agreement, signed by the Members themselves as required by § 57D-3-04(b), requesting inspection and copying of the records the statute and Operating Agreement require the Company to maintain. Spice, acting through the Atakoras, initially objected and refused to provide any of the requested records. Though they have since produced a limited number of documents in August 2026, they have not produced all of the requested information.

191. Plaintiffs provided reasonable notice and requested reasonable information consistent with their information rights.

192. Plaintiffs are entitled to an order requiring Spice, through its Managers or other authorized persons, to provide the information to which they are entitled as Members under N.C. Gen. Stat. § 57D-3-04, including all books, records, financial statements, bank statements, tax returns, plans of operation, budgets, and meeting minutes.

**SECOND INDIVIDUAL CLAIM**
**BREACH OF OPERATING AGREEMENT (Against 1221 Hospitality)**

193. The above allegations are hereby realleged and incorporated by reference.

194. The Operating Agreement is a valid and binding agreement among the Members of Spice.

195. 1221 Hospitality breached Section 3.2, Article 9, and Article 10 of the Operating Agreement in connection with transferring a portion of its membership interest in Spice to Baptiste Consulting LLC, and later repurchasing membership interests from Baptiste Consulting LLC and Akhenthians Investments LLC, as outlined above.

196. 1221 Hospitality's breach of the Operating Agreement caused Plaintiffs damages by, among other things, depriving them of their right of first refusal and by impacting the

allocation of membership interests within Spice.

## THIRD INDIVIDUAL CLAIM
## BREACH OF FIDUCIARY DUTIES (Against 1221 Hospitality)

197. The above allegations are hereby realleged and incorporated by reference.

198. 1221 Hospitality, as the majority Member, owed fiduciary duties to Plaintiffs, as minority members.

199. Though Plaintiffs contend that the language in Section 4.2 of the Operating Agreement providing that Managers may be removed by "majority agreement of the Members" must mean by a majority number of Members rather than a majority of interest in Spice, 1221 Hospitality takes the opposite position. In so doing, 1221 Hospitality effectively dictates that two of its members, the Atakoras, maintain their status as Managers of Spice in perpetuity, regardless of their performance and over the objections of the minority members.

200. In other words, because 1221 Hospitality takes the position that it controls the Managers, it also necessarily takes the position that it controls Spice. This is because Section 3.3 of the Operating Agreement provides,

> The Managers shall have exclusive authority to manage the business of the Company and no Member who is not also serving as a Manager shall have the right to participate in the management and control of the Company's business or the authority to: (a) transact any business on behalf of the Company; (b) execute or deliver any document in the Company's name; or (c) take any other action binding the Company in any way.

201. By installing and maintaining its own members—the Atakoras—as Spice's Managers, and by asserting that its majority membership interest gives it the unilateral power to prevent their removal, 1221 Hospitality has exercised control over both the selection of Spice's Managers and every material aspect of Spice's management.

202. Through its exercise of control over Spice through the Atakoras as de facto permanent Managers, 1221 Hospitality has trampled on Plaintiffs' rights as minority members. 1221 Hospitality ensures that Plaintiffs are provided no information about Spice's current operations. Plaintiffs have had no notice of any Spice meeting for nearly two years. The only limited data that they received after requesting information for more than a year and filing a lawsuit was old and not current. And though Section 3.5 of the Operating Agreement discusses the ability of Members to vote, 1221 Hospitality has eliminated Plaintiffs' ability to vote on any matter pertaining to Spice's operations by ensuring that no votes occur. Indeed, Plaintiffs have not been asked to vote on any matter since at least before October 2024.

203. Thus, 1221 Hospitality has exerted complete and exclusive control over Spice's operations, finances, records, meetings, distributions, and business decisions, while blocking Plaintiffs from any oversight.

204. 1221 Hospitality's conduct as outlined herein constitutes a breach of its fiduciary duties owed to Plaintiffs.

205. 1221 Hospitality's breach of its fiduciary duties to Plaintiffs have caused Plaintiffs damages by, among other things, depriving them of their right to participate in the governance of Spice, the value of their membership interests in Spice, and the ability to exercise their rights under the Operating Agreement.

206. Because 1221 Hospitality's conduct was willful, wanton, malicious, and undertaken in conscious and reckless disregard of Plaintiffs' rights, Plaintiffs are also entitled to punitive damages to the extent permitted by North Carolina law.

**FOURTH INDIVIDUAL CLAIM**
**BREACH OF MEMBERSHIP PURCHASE AGREEMENTS (Against Nana Atakora)**

207. The above allegations are hereby realleged and incorporated by reference.

208. The MPAs between Nana and each of 3 Ventures and MJT Ventures are valid and binding agreements.

209. Under Section 1.4 of each MPA, Nana "transfer[red] and convey[ed] all of [his] right, title, and interest in and to [Spice], including the rights and obligations associated with [Spice's] assets including, but not limited to, all of [Spice's] property, inventory, accounts receivable, furniture, fixtures, contracts, goodwill, intellectual property, and the 'Spice Tapas' brand." Nana represented and warranted that he "own[ed] and [had] good and marketable title" to the interests conveyed and the "full legal right to convey" such interests.

210. ~~157.~~ Nana ~~Atakora has~~ breached the MPAs by continuing to exercise ownership over the transferred assets, ~~especially~~ including Spice's goodwill, intellectual property, and the Spice brand, in connection with the creation and operation of Spice Atlanta. Nana's use of these assets to create a competing restaurant directly contradicts his conveyance of those assets under the MPAs.

~~158. Pursuant to the MPAs, Nana Atakora also represented and warranted that he had good and marketable title and the full legal right to convey the intellectual property assets.~~

211. ~~159.~~ To the extent that Nana ~~Atakora~~ did not have good and marketable title or the full legal right to convey the intellectual property assets, he breached the warranty provisions of the MPAs.

212. In addition, Section 1.3 of each MPA provides that "[w]ithout Purchaser's prior written approval, neither [Nana] nor Baffour Atakora, nor any related party, shall be paid as an

employee or contractor of the Company." Neither 3 Ventures nor MJT Ventures ever gave such written approval. This provision was a material term of the MPAs that ensured Spice's funds would not be diverted to the Atakoras and their related parties absent Plaintiffs' informed consent.

213. Plaintiffs have never authorized the Atakoras or any related parties to receive payment from Spice.

214. Yet, upon information and belief, the Atakoras and related parties have received payments from Spice without authorization and in violation of Section 1.3.

215. ~~160. Nana Atakora's breach~~Nana's breaches of the MPAs ~~has damaged~~have caused Plaintiffs damages in an amount to be proven at trial.

**FIFTH INDIVIDUAL CLAIM IN THE ALTERNATIVE**
**UNFAIR COMPETITION – TRADEMARK AND TRADE-NAME INFRINGEMENT UNDER SECTION 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a) (Against the Atakoras and 1221 Hospitality)**

216. The above allegations are hereby realleged and incorporated by reference.

217. To the extent that the Third Derivative Claim fails because it is determined that Spice does not own its intellectual property, including its trade name and trademarks, Plaintiffs own Spice's intellectual property, goodwill, and brand as a result of the transfer of all right and title to same under Section 1.4 of the MPAs.

218. For the reasons outlined herein, including in the Third Derivative Claim, 1221 Hospitality and the Atakoras have engaged in unfair competition by infringing on the Spice trade name and other trademarks associated with Spice.

219. Because Plaintiffs own this intellectual property and the "Spice Tapas" brand,

1221 Hospitality's and the Atakora's infringement has damaged Plaintiffs' rights and ownerships in the intellectual property. Plaintiffs are therefore entitled to recover damages from 1221 Hospitality and the Atakoras in an amount to be proven at trial, and 1221 Hospitality and the Atakoras should be enjoined from further unauthorized use of the "Spice" mark and trade name because the conduct has caused, and is continuing to cause, irreparable injury to Plaintiffs, who own the intellectual property at issue.

**SIXTH INDIVIDUAL CLAIM IN THE ALTERNATIVE**
**UNFAIR COMPETITION – FALSE ADVERTISING UNDER SECTION 43(a)(1)(B) OF THE LANHAM ACT (Against the Atakoras and 1221 Hospitality)**

220. The above allegations are hereby realleged and incorporated by reference.

221. To the extent that the Fifth Derivative Claim fails because it is determined that Spice does not own its intellectual property, including its trade name and trademarks, Plaintiffs own Spice's intellectual property, goodwill, and brand as a result of the transfer of all right and title to same under Section 1.4 of the MPAs.

222. For the reasons outlined herein, including in the Fifth Derivative Claim, 1221 Hospitality and the Atakoras have engaged in unfair competition by falsely advertising that Spice Atlanta is affiliated with or has a franchise relationship with Spice.

223. 1221 Hospitality's and the Atakoras' false advertising has damaged Plaintiffs, who owns Spice's goodwill and brand, in an amount to be proven at trial.

224. 1221 Hospitality and the Atakoras should also be enjoined from further false advertising because their conduct has caused, and is continuing to cause, irreparable injury to Plaintiffs, who own the intellectual property at issue.

**SEVENTH INDIVIDUAL CLAIM IN THE ALTERNATIVE**
**UNJUST ENRICHMENT (Against 1221 Hospitality and Baffour Atakora)**

225. The above allegations are hereby realleged and incorporated by reference.

226. To the extent that the Thirteenth Derivative Claim fails because it is determined that Spice does not own its intellectual property, including its trade name and trademarks, Plaintiffs own Spice's intellectual property, goodwill, and brand as a result of the transfer of all right and title to same under Section 1.4 of the MPAs.

227. For the reasons outlined herein, including in the Thirteenth Derivative Claim, 1221 Hospitality and Baffour Atakora have been unjustly enriched by retaining the benefit of using the intellectual property, goodwill, and brand of Spice owned by Plaintiffs without providing Plaintiffs any payment for the use of their intellectual property.

228. As a result of 1221 Hospitality's and Baffour Atakora's wrongful acts and unjust enrichment, Plaintiffs have suffered and will continue to suffer damages.

**EIGHTH INDIVIDUAL CLAIM IN THE ALTERNATIVE**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NORTH CAROLINA COMMON LAW (Against 1221 Hospitality, Nana Atakora, and Baffour Atakora)**

229. The above allegations are hereby realleged and incorporated by reference.

230. To the extent that the Fourth Derivative Claim fails because it is determined that Spice does not own its intellectual property, including its trade name and trademarks, Plaintiffs own Spice's intellectual property, goodwill, and brand as a result of the transfer of all right and title to same under Section 1.4 of the MPAs.

231. For the reasons outlined herein, including in the Fourth Derivative Claim, 1221 Hospitality and the Atakoras have misappropriated the "Spice" mark and trade name through their unauthorized use of the mark and trade name in connection with Spice Atlanta, and their

trademark infringement and unfair competition is likely to cause confusion, mistake, or deception amongst consumers.

232. 1221 Hospitality's and the Atakoras' conduct has been willful, wanton, reckless and in total disregard of Plaintiffs' ownership rights, and has caused and is continuing to cause damage to Plaintiffs.

233. Unless enjoined, 1221 Hospitality's and the Atakoras' conduct will continue to cause irreparable harm to Plaintiffs.

**NINTH INDIVIDUAL CLAIM IN THE ALTERNATIVE**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 (Against the Atakoras and 1221 Hospitality)**

234. The above allegations are hereby realleged and incorporated by reference.

235. To the extent that the Sixth Derivative Claim fails because it is determined that Spice does not own its trade secrets, Plaintiffs own Spice's trade secrets as a result of the transfer of all right and title to same under Section 1.4 of the MPAs.

236. For the reasons outlined herein, including in the Sixth Derivative Claim, 1221 Hospitality and the Atakoras have misappropriated Spice's trade secrets, which has caused damage to Plaintiffs, who are also entitled to injunctive relief to prevent any actual or threatened continuation of the misappropriation.

**TENTH INDIVIDUAL CLAIM IN THE ALTERNATIVE**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE NORTH CAROLINA TRADE SECRETS PROTECTION ACT, N.C. GEN. STAT. §§ 66-152, et seq.**
**(Against the Atakoras and 1221 Hospitality)**

237. The above allegations are hereby realleged and incorporated by reference.

238. To the extent that the Seventh Derivative Claim fails because it is determined that

Spice does not own its trade secrets, Plaintiffs own Spice's trade secrets as a result of the transfer of all right and title to same under Section 1.4 of the MPAs.

239. For the reasons outlined herein, including in the Seventh Derivative Claim, 1221 Hospitality and the Atakoras have misappropriated Spice's trade secrets, which has caused damage to Plaintiffs, who are also entitled to injunctive relief to prevent any actual or threatened continuation of the misappropriation.

**ELEVENTH INDIVIDUAL CLAIM IN THE ALTERNATIVE**
**UNFAIR AND DECEPTIVE TRADE PRACTICES N.C. GEN. STAT. § 75-1.1 (Against 1221 Hospitality, Nana Atakora, and Baffour Atakora)**

240. The above allegations are hereby realleged and incorporated by reference.

241. To the extent that the Eighth Derivative Claim fails because it is determined that Spice does not have standing to pursue the claim based on a lack of ownership of its intellectual property and trade secrets, Plaintiffs own Spice's intellectual property, goodwill, and brand as a result of the transfer of all right and title to same under Section 1.4 of the MPAs.

242. For the reasons outlined herein, including in the Eighth Derivative Claim, 1221 Hospitality and the Atakoras have engaged in conduct that violates North Carolina's Unfair and Deceptive Trade Practices Act, and caused damage to Plaintiffs.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

1. Grant judgment in Plaintiffs' favor and against Defendants on all counts;

2. Pursuant to 15 U.S.C. § 1116 and/or other applicable law, permanently enjoin Defendants, including their officers, agents, employees, successors, assigns, and all other persons and entities in privity and acting in concert with Defendants, from infringing on Spice's intellectual property, including prohibiting further use and advertisement of (a) Spice marks and trade name, or any confusingly similar marks alone or in combination with other words, symbols, or designs, (b) any trade name,

words, abbreviations, or combinations thereof that would imitate, resemble, or suggest the Spice mark, (c) any statement or representation that falsely designates or describes Spice Atlanta as authorized, affiliated with, or associated with Spice, or that is likely to confuse consumers as to the affiliation (or lack thereof) between Spice Atlanta and Spice;

3. Pursuant to 15 U.S.C. § 1116 and/or other applicable law, require that Defendants remove from any and all websites and social media the false, deceptive and misleading advertising for Spice Atlanta and infringing use of Spice's mark and tradename, as described in the Complaint;

4. Pursuant to 18 U.S.C. § 1836 and N.C. Gen. Stat. § 66-154, permanently enjoin Defendants from any actual or threatened misappropriation of Spice's trade secrets;

5. Award Spice damages under 18 U.S.C. § 1836 for Defendants' trade-secret misappropriation, including actual loss, unjust enrichment, and exemplary damages of up to two times the compensatory award for willful and malicious misappropriation, plus reasonable attorneys' fees;

6. Award Spice damages under N.C. Gen. Stat. § 66-154 for Defendants' trade-secret misappropriation under the North Carolina Trade Secrets Protection Act;

7. ~~4.~~ Award Spice damages under 15 U.S.C. § 1117, and/or other applicable law, including, without limitation, disgorgement of profits, lost profits, a reasonable royalty, and/or any other damages sufficient to compensate Plaintiffs for Defendants' trademark infringement, false advertising, and unfair competition;

8. ~~5. An~~Order an accounting to determine the proper amount of damages;

9. ~~6.~~ Award Spice a three-fold increase in damages under 15 U.S.C. § 1117 and/or other applicable law, for Defendants' willful, wanton, and deliberate acts of infringement and unfair methods of competition and deceptive practices;

10. ~~7.~~ Award Spice pre- and post-judgment interest pursuant to 15 U.S.C. § 1117 and/or other applicable law;

11. ~~8.~~ Award Spice treble damages ~~(N.C. Gen. Stat § 75-16)~~ and attorneys' fees ~~(N.C. Gen. Stat. § 75-16.1) pursuant to~~under the North Carolina Unfair & Deceptive Trade Practices Act;

12. ~~9.~~ Enter a judgment declaring that the Atakoras have been removed as Managers of Spice;

13. ~~10.~~ Enter a judgment declaring that Spice purchased the 6.6% membership interest of

~~Batiste~~Baptiste Consulting LLC and, to the extent applicable, the membership interest formerly held by Akhenthians Investments LLC, and that the remaining Members' membership interest is adjusted proportionately to reflect that purchase;

14. ~~11.~~ Order the Atakoras and Spice to provide Plaintiffs the information to which they are entitled under N.C. Gen. Stat. § 57D-3-04;

15. Order Defendants to disgorge all profits derived from their misappropriation of Spice's funds, intellectual property, trade secrets, and goodwill;

16. ~~12.~~ Award Spice damages in excess of $75,000 on Plaintiffs' derivative claims;

17. ~~13.~~ Award Spice punitive damages on Plaintiffs' derivative and individual claims;

18. ~~14.~~ Award Plaintiffs damages on their individual ~~cause of action~~claims;

19. ~~15.~~ Award Plaintiffs pre and post-judgment interest;

20. ~~16.~~ Award Plaintiffs their reasonable attorneys' fees under N.C. Gen. Stat. § 57D-8-05 and all other applicable statutes;

21. ~~17.~~ Hold a trial by jury on all claims in which such a right exists;

22. ~~18.~~ Tax the costs of this civil action against the Defendants; and

23. ~~19.~~ Grant such other and further relief as it deems just and proper.

This ~~16th~~the 18th day of ~~June~~September 2026.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Patrick Grayson Spaugh
Patrick Grayson Spaugh (N.C. Bar No. 49532)
Philip Mayer (N.C. Bar No. 52288)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4996
Facsimile: (704) 338-7854
Email: Patrick.Spaugh@wbd-us.com

*Attorney for Plaintiffs*