**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 3:26-cv-00471**

| | |
|---|---|
| **3 Ventures, LLC and MJT Ventures LLC, individually and derivatively on behalf of Spice Tapas LLC**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Nana Atakora, Baffour Atakora, and 1221 Hospitality LLC,**<br><br>**Defendants,**<br><br>**v.**<br><br>**Spice Tapas LLC,**<br><br>**Nominal Defendant** | **<u>Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint</u>** |

**Table of Contents**


**I. Introduction** ........ 2

**II. Factual Allegations** ........ 3

**III. Legal Standard** ........ 5

**IV. Argument** ........ 5

**A. Plaintiffs' Federal Claims Fail as a Matter of Law.** ........ 5

**1. Plaintiffs' 5th and 9th Individual Claims Fail Because Plaintiffs Do Not Own Spice's Intellectual Property.** ........ 6

**2. Plaintiffs Fail to State Claims for Trademark Infringement or False Association.** 7

**3. Plaintiffs Fail to State Claims for False Advertising.** ........ 8

**4. Plaintiffs Fail to State Claims for Trade-Secret Misappropriation.** ........ 10

**5. Plaintiffs' 3rd, 5th, and 6th Derivative Claims Fail because the Amended Complaint did not Cure Plaintiffs' Failure to Satisfy the Statutory Demand Requirements before Commencing this Action.** ........ 11

**B. Defendants Respectfully Request that the Court Decline Supplemental Jurisdiction Over the Remaining State-Law Claims.** ........ 12

C. Alternatively, Defendants Request that Plaintiffs' State-Law Claims be Dismissed or Narrowed. ........ 12
1. Plaintiffs' State-Law Claims concerning Spice Atlanta Fail. ........ 12
2. Plaintiffs' Remaining Derivative Claims Fail. ........ 15
3. Plaintiffs' Remaining Individual Claims Fail. ........ 20
V. Conclusion ........ 23

Defendants Nana Atakora, Baffour Atakora, and 1221 Hospitality LLC, as well as nominal Defendant Spice Tapas LLC (collectively "Defendants"), by and through the undersigned counsel, submit the following Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Amended Complaint.

## I. Introduction

Plaintiffs hold 12% of Spice Tapas LLC ("Spice"). Defendant 1221 Hospitality, LLC holds 88%, and Spice's Operating Agreement gives 1221 Hospitality's principals, brothers Nana and Baffour Atakora, "exclusive authority" to manage Spice for ten years, subject to the removal provision in § 4.2, and permits any Member to pursue "other business ventures of every nature." (Doc 17-1, Article 7.) Plaintiffs "removed" the Managers by a 12% vote and bring twenty-four counts against them here.

The causes of action in Plaintiffs' Amended Complaint arise from disputes concerning the ownership and management of Spice Tapas LLC and the operation of a separate restaurant in Atlanta. None of Plaintiffs' federal claims can survive a motion to dismiss.

First, Plaintiffs failed to satisfy the statutory prerequisites for their derivative federal claims before commencing this action. Independently, their Lanham Act and trade-secret claims fail to allege the essential elements of actionable infringement, false advertising, or trade-secret

misappropriation. Plaintiffs' alternative individual federal claims likewise fail because the Membership Interest Purchase Agreements conveyed membership interests, not direct ownership of Spice's intellectual property.

With all federal claims dismissed, Defendants respectfully request that the Court decline supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3). Alternatively, those claims independently warrant dismissal or narrowing because, among other reasons, Plaintiffs improperly assert individual claims for injuries belonging to Spice, fail to establish the requisite fiduciary duties, and attempt to recast internal LLC disputes as unfair and deceptive trade practices in commerce. North Carolina also does not recognize a claim for aiding and abetting breach of fiduciary duty.

Defendants therefore respectfully request dismissal of the Amended Complaint in its entirety.

## II. Factual Allegations

Spice operates a Charlotte restaurant. (Am. Compl. ¶ 80.) Plaintiffs 3 Ventures and MJT Ventures own 10% and 2% of Spice, respectively. (Am. Compl. ¶ 12.) Defendant 1221 Hospitality ("1221") holds the remaining 88%. (Am. Compl. ¶ 94.) Plaintiffs acquired their interests through Membership Interest Purchase Agreements ("MIPAs") defining the purchased "Interest" as 10% or 2% of Nana Atakora's membership units. (Doc. 17-2, § 1.1.) Section 1.4 of the MIPAs conveyed rights "in and to the Interest," although Plaintiffs misquote that provision as conveying rights "in and to [Spice]." (Am. Compl. ¶¶ 13, 60; Doc. 17-2, § 1.4.)

Spice's Operating Agreement appoints Nana and Baffour Atakora as Managers with exclusive management authority, permits Members to pursue independent ventures, and provides

that Company property belongs to Spice. (Doc. 17-1, §§ 3.3, 4.1–4.2, Art. 7, §14.4.) Sections 9.2 and 9.5 of the Operating Agreement govern transfers of membership interests and rights of first refusal.

Plaintiffs allege that 1221 transferred membership interests to Baptiste Consulting and Akhenthians in 2023 without Plaintiffs' consent, then repurchased those interests in 2024 using Spice's funds. (Am. Compl. ¶¶ 44–53.) Plaintiffs also allege unauthorized payments to the Atakoras without identifying specific disbursements. (*Id.* ¶ 40.) In November 2025, Plaintiffs purported to remove the Atakoras as Managers by a two-member vote, although Plaintiffs together hold only 12% of Spice. (Doc. 17-7.)

Plaintiffs issued derivative demands concerning the membership transactions and management on January 24, 2025, and March 9, 2026. (Docs. 17-3, 17-6.) Plaintiffs also demanded inspection of certain records of Spice's. (Doc. 17-4.) Spice disputed the scope of inspection, but produced certain records it deemed within the scope of N.C. Gen. Stat. §57D-3-04. (Am. Compl. ¶¶ 32, 37; Docs. 17-4, 17-5.)

Plaintiffs further allege that 1221 opened Spice Atlanta in May 2026, copying Spice's menus, prices, website, branding, and social-media content. (Am. Compl. ¶¶ 59, 64–87.) Plaintiffs also allege misappropriation of recipes, vendor information, and operational and financial data. (*Id.* ¶ 82.) Plaintiffs issued a derivative demand concerning Atlanta on June 16, 2026, the same day they commenced this federal action. (Doc. 17-8.) Plaintiffs' September 21 Amended Complaint asserts thirteen derivative and eleven individual claims. (Doc. 17.)

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when the complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts should "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails," and dismissal is appropriate when the attached document "negates the claim." *Goines v. Valley Community Services Board*, 822 F.3d 159, 166 (4th Cir. 2016) (cleaned up).

## IV. Argument

### A. <u>Plaintiffs' Federal Claims Fail as a Matter of Law.</u>

Plaintiffs' 3rd, 5th, and 6th Derivative Claims as well as Plaintiffs' 5th, 6th, and 9th Individual Claims arise under federal law. For the reasons that follow, Defendants respectfully request that the Court dismiss each of these claims.

**1. Plaintiffs' 5th and 9th Individual Claims Fail Because Plaintiffs Do Not Own Spice's Intellectual Property.**[1]

Plaintiffs' individual federal claims rest on a misreading of the Membership Interest Purchase Agreements ("MIPAs"). Section 1.1 defines the purchased "Interest" as 10% or 2% of Nana's membership units; § 1.4 conveys rights "in and to the Interest," not ownership of Spice's assets. (Doc. 17-2, §§ 1.1, 1.4, at 1–2, 11–12.) The assignments confirm that only membership units and corresponding distribution rights were conveyed. (*Id.* at 9, 19.) Plaintiffs' contrary allegations substitute "[Spice]" for "the Interest" (Am. Compl. ¶¶ 13, 60, 217); however, the exhibits control. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Spice, not its Members, owns its intellectual property. (Doc. 17-1, § 14.4; *Chafin v. Chafin*, 250 N.C. App. 19, 27 (2016).) Accordingly, Plaintiffs' 5th and 9th Individual Claims fail because they rest on Plaintiffs' purported ownership of Spice's mark and trade secrets. Plaintiffs' 6th Individual Claim also fails because Plaintiffs allege no injury to their own commercial sales or reputation independent of Spice's. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–34 (2014).

Because Plaintiffs neither own Spice's intellectual property nor allege a commercial injury independent of Spice's, Defendants respectfully request that the Court dismiss Plaintiffs' 5th, 6th, and 9th Individual Claims.

---

[1] Plaintiffs' 5th Individual Cause of Action is for Unfair Competition – Trademark and Trade name Infringement under Section 43(a)(1)(A) of the Lanham Act, 15 USC §1125(a). Plaintiffs' 9th Individual Cause of Action is for Misappropriation of Trade Secrets under the Defend Trade Secrets Act 18 U.S.C. § 1836

## 2. Plaintiffs Fail to State Claims for Trademark Infringement or False Association.[2]

To establish infringement of an unregistered trademark, a plaintiff must show that it owns a valid and protectable mark and that the defendant's use creates a likelihood of consumer confusion. *Moke Am. LLC v. Moke Int'l Ltd.*, 126 F.4th 263, 272 (4th Cir. 2025) (citing *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018)).

"Spice" is at least arguably descriptive of restaurant fare and, if deemed descriptive, requires secondary meaning to qualify for protection. *Moke Am.,*126 F.4th at 270 (explaining that descriptive marks require secondary meaning to qualify for trademark protection). Although Plaintiffs allege use of the mark since 2023 and associated advertising, they offer only conclusory assertions that consumers identify "Spice" with a particular commercial source. (Am. Compl. ¶¶ 111–17.) Plaintiffs identify no facts plausibly establishing secondary meaning.

Plaintiffs' false-affiliation theory is likewise deficient. Plaintiffs allege that consumers will mistakenly believe Spice and Spice Atlanta are affiliated when, in fact, they are not. (Am. Compl. ¶ 120.) Yet the Complaint establishes that 1221 Hospitality owns a controlling interest in Spice and operates Spice Atlanta, while the Atakoras manage both restaurants. (*Id*. ¶¶ 5, 15, 59, 94, 110.) These allegations contradict Plaintiffs' assertion that the restaurants lack any affiliation. Although Plaintiffs separately allege that Spice did not authorize Atlanta's use of the mark, Plaintiffs identify no facts establishing that consumers would mistake the restaurants' actual ownership and managerial connections for a distinct representation of sponsorship or approval.

Plaintiffs' 5th Individual Claim independently fails because Spice, not Plaintiffs, owns its mark. (*See* § IV.A.1.) Alternatively, even accepting Plaintiffs' construction of the MIPAs as

[2] Plaintiffs' 3rd Derivative Claim is for Unfair Competition – Trademark and Trade-name infringement under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs' 5th Individual Claim is for Trademark and Trade name Infringement under § 43(a)(1)(A) of the Lanham Act, 15 USC §1125(a)

conveying direct interests in Spice's intellectual property, the agreements conveyed only 10% and 2% interests, not exclusive trademark rights. Neither agreement prohibited Nana's continued use or authorization of others' use of the mark. Under Plaintiffs' own ownership theory, Plaintiffs would be co-owners rather than exclusive owners. A trademark co-owner generally cannot maintain an infringement claim against another co-owner or a party authorized by that co-owner. *Reed v. Marshall*, 142 F.4th 338, 346 (5th Cir. 2025); *Piccari v. GTLO Prods., LLC*, 115 F. Supp. 3d 509, 514–16 (E.D. Pa. 2015). Plaintiffs' 5th Individual Claim fails under either construction of the MIPAs.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' 3rd Derivative Claim for failure to allege sufficient facts establishing a protectable mark or actionable false association, and Plaintiffs' 5th Individual Claim for those same reasons and because Plaintiffs cannot establish infringement under either construction of the MIPAs.

### 3. Plaintiffs Fail to State Claims for False Advertising.[3]

Section 43(a)(1)(B) of the Lanham Act addresses misrepresentations concerning the nature, characteristics, or qualities of goods, services, or commercial activities, whereas § 43(a)(1)(A) addresses false association, affiliation, sponsorship, or approval. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706 (4th Cir. 2016).

Plaintiffs challenge statements identifying both restaurants as "a 1221 Hospitality concept" and welcoming website visitors to 1221 Hospitality. (Am. Compl. ¶¶ 131–35.) Those statements reflect 1221's actual ownership interest in Spice and its operation of Spice Atlanta. Plaintiffs contend that the statements falsely imply Spice's authorization and quality control over Atlanta,

[3] Plaintiffs' 5th Derivative Claim is for Unfair Competition – False Advertising under §43(a)(1)(B) of the Lanham Act. Plaintiffs' 6th Individual Claim is for False Advertising Under Section 43(a)(1)(B) of the Lanham Act.

but that theory principally concerns affiliation, sponsorship, or approval under § 43(a)(1)(A). Plaintiffs identify no independently false representation concerning the restaurants' services or commercial activities sufficient to establish a separate false-advertising claim.

Plaintiffs also fail to allege plausibly that the challenged advertising proximately caused commercial injury. Although Plaintiffs assert that consumers attribute negative experiences at Spice Atlanta to Spice, they identify no concrete facts substantiating that conclusion. The cited reviews expressly identify Spice Atlanta, and Plaintiffs identify no consumer who mistakenly attributed an Atlanta experience to the Charlotte restaurant or withheld business from Spice because of the challenged statements. (*Id.* ¶¶ 136–37.) Plaintiffs' conclusory allegations do not plausibly establish injury to Spice's sales or reputation proximately caused by the alleged misrepresentations. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133–34 (2014).

Plaintiffs' 6th Individual Claim independently fails because Plaintiffs allege no injury to their own commercial sales or reputation, only injury to Spice. (Am. Compl. ¶¶ 221–24.) *Lexmark*, 572 U.S. at 131–34.

Because Plaintiffs fail to allege actionable false advertising or resulting commercial injury, Defendants respectfully request that the Court dismiss Plaintiffs' 5th Derivative and 6th Individual Claims. The 6th Individual Claim also fails for lack of injury to Plaintiffs themselves.

### 4. Plaintiffs Fail to State Claims for Trade-Secret Misappropriation.[4]

The Defend Trade Secrets Act requires Plaintiffs to identify a protectable trade secret with sufficient particularity and plausibly allege its misappropriation. *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228–31 (4th Cir. 2025). Plaintiffs' allegations rely principally on similarities between the restaurants' publicly available menus, prices, website content, and social-media descriptions. (Am. Compl. ¶¶ 73–78, 85.) Such publicly disclosed information does not itself constitute a trade secret.

Although proprietary recipes, negotiated supplier prices, cost structures, and operational processes may qualify as trade secrets, Plaintiffs identify only broad categories of allegedly confidential information without sufficient detail to distinguish the purported secrets from general business knowledge. (*Id.* ¶ 82.) Nor do Plaintiffs allege specific facts establishing reasonable measures taken to preserve their secrecy. (*Id.* ¶ 84.) Such sweeping allegations are insufficient under *Sysco*. 143 F.4th at 229–30.

Plaintiffs likewise fail to plausibly allege misappropriation. Although the Atakoras allegedly had access to confidential information as Managers, Plaintiffs identify no facts explaining how Defendants used any particular nonpublic recipe, supplier arrangement, pricing methodology, or operational process at Spice Atlanta. Instead, Plaintiffs infer misappropriation from similarities in publicly available materials. (Am. Compl. ¶ 85.) That inference does not sufficiently establish acquisition, disclosure, or use of a protectable trade secret. *Sysco*, 143 F.4th at 230–31.

---

[4] Plaintiffs' 6th Derivative and 9th Individual Claims are for Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

Because Plaintiffs fail to allege a sufficiently identified, protectable trade secret or its misappropriation, Defendants respectfully request that the Court dismiss Plaintiffs' 6th Derivative and 9th Individual Claims. Plaintiffs' 9th Individual Claim independently fails because Plaintiffs do not own Spice's trade secrets. (*See* § IV.A.1.)

**5. Plaintiffs' 3rd, 5th, and 6th Derivative Claims Fail because the Amended Complaint did not Cure Plaintiffs' Failure to Satisfy the Statutory Demand Requirements before Commencing this Action.**

Rule 23.1 of the Federal Rules of Civil Procedure governs the pleading of derivative demands, while substantive demand requirements ordinarily derive from the law of the entity's state of organization. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96–100, 108–09 (1991).

Under N.C. Gen. Stat. § 57D-8-01(a)(2), a member must make written demand and wait ninety days before commencing a derivative action unless the LLC rejects the demand or waiting would cause irreparable injury to the LLC. Plaintiffs commenced this derivative action on June 16, 2026, the same day they issued their first demand concerning Spice Atlanta. (Doc. 1; Doc. 17-8.) The original Complaint alleged the same Atlanta conduct and incorporated those allegations into its individual claims. (Doc. 1, ¶¶ 61–80, 90.) Spice had not rejected the demand, and Plaintiffs allege no facts establishing that waiting ninety days would have caused irreparable injury to Spice.

In *Tiller v. Phillips*, 2025 NCBC 63, ¶¶ 79–81, the Business Court held that amending a complaint after the ninety-day period expires does not cure a derivative action commenced prematurely. *See also Garlock v. Hilliard*, 2000 NCBC 11, ¶¶ 16–18. Although Plaintiffs first expressly asserted the Atlanta-based federal claims derivatively in their September 21 Amended Complaint, they had already commenced a derivative proceeding incorporating the same alleged misconduct. Defendants submit that *Tiller*'s reasoning applies: Plaintiffs cannot retroactively

satisfy a statutory pre-suit requirement through amendment of an existing derivative action. Defendants therefore respectfully request that the Court dismiss Plaintiffs' 3rd, 5th, and 6th Derivative Claims for failure to satisfy the statutory demand requirements of § 57D-8-01(a)(2).

**B. Defendants Respectfully Request that the Court Decline Supplemental Jurisdiction Over the Remaining State-Law Claims.**

Dismissal of all federal claims permits the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). The remaining claims concern North Carolina LLC governance, contractual obligations, and company property. Judicial economy, convenience, fairness, and comity favor dismissal without prejudice. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

**C. Alternatively, Defendants Request that Plaintiffs' State-Law Claims be Dismissed or Narrowed.**

**1. Plaintiffs' State-Law Claims concerning Spice Atlanta Fail.**

a. **Plaintiffs Fail to State a Claim for Common-Law Trademark Infringement**.[5]

Plaintiffs' common-law trademark infringement and unfair competition claims fail for the same reasons as their federal counterparts. North Carolina applies substantially the same standards as the Lanham Act. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Therefore, Plaintiffs' state-law claims for trademark infringement fail for the reasons stated in § IV.A.2. Plaintiffs' individual claim also fails because Plaintiffs do not own Spice's mark. (See § IV.A.1.)

[5] Plaintiffs' 4th Derivative and 8th Individual Claim are for Trademark Infringement and Unfair Competition under North Carolina common law.

**b. Plaintiffs Fail to State a Claim for Trade Secret Misappropriation.**[6]

Plaintiffs' state-law trade-secret misappropriation claims fail because they do not plausibly allege the existence or misappropriation of protectable trade secrets. Plaintiffs identify broad categories of purported trade secrets: recipes, vendor information, operational methods, financial data, and branding strategies, without identifying the specific confidential information allegedly taken. (Am. Compl. ¶ 82.) Plaintiffs infer misappropriation from similarities in publicly available menus and marketing materials, without facts establishing use of nonpublic information. (*Id.* ¶¶ 73–78, 85.) Such allegations are insufficient under *Krawiec v. Manly*, 370 N.C. 602, 609–12 (2018). Plaintiffs' 10th Individual Claim independently fails because Plaintiffs do not own Spice's trade secrets. (*See §* IV.A.1.)

For these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' 7th Derivative and 10th Individual Claims for failure to identify a protectable trade secret or plausibly allege its misappropriation, and dismiss the 10th Individual Claim on the additional ground that the alleged trade secrets belong to Spice, not Plaintiffs.

**c. Plaintiffs Fail to State a Claim for Unfair and Deceptive Trade Practices.**[7]

Plaintiffs' unfair and deceptive trade practices claims fail because they do not plausibly allege actionable misconduct and resulting injury under N.C. Gen. Stat. § 75-1.1.

To the extent Plaintiffs' claims arise from disputes concerning Spice's internal management, ownership, and governance, such conduct falls outside § 75-1.1. *White v. Thompson*,

---

[6] Plaintiffs' 7th Derivative and 10th Individual Claims are for Misappropriation of Trade Secrets under the NC Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152, *et seq.*

[7] Plaintiffs' 8th Derivative and 11th Individual Claims are for Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1

364 N.C. 47, 52–53 (2010). Plaintiffs' allegations concerning Spice Atlanta involve marketplace conduct but likewise fail to state a claim. For the reasons discussed in §§ IV.A.2–4 and IV.C.1.a–b, Plaintiffs have not plausibly alleged that Defendants engaged in actionable trademark infringement, false advertising, or trade-secret misappropriation. Nor do Plaintiffs allege sufficient facts establishing that the challenged conduct was otherwise unfair or deceptive or proximately caused injury to Spice. (Am. Compl. ¶¶ 157–61.)

Plaintiffs' 11th Individual Claim independently fails because the alleged intellectual property and resulting commercial injuries belong to Spice, not Plaintiffs. (Am. Compl. ¶¶ 240–42.) For these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' 8th Derivative and 11th Individual Claims.

#### d. Plaintiffs Fail to State a Claim for Unjust Enrichment.[8]

Plaintiffs' unjust enrichment claims fail because they allege wrongful appropriation, not conferral of a benefit. Plaintiffs allege that Defendants wrongfully appropriated Spice's goodwill and intellectual property, not that Spice or Plaintiffs conferred a benefit on Defendants. Wrongful appropriation does not satisfy the conferral requirement for unjust enrichment. *Tiller v. Phillips*, 2025 NCBC 63, ¶¶ 120–25. For this reason, Defendants respectfully request that the Court dismiss Plaintiffs' 13th Derivative and 7th Individual Claims.

---

[8] Plaintiffs' 13th Derivative Claim and 7th Individual Claim are for Unjust Enrichment.

**2. Plaintiffs' Remaining Derivative Claims Fail.**

a. **Plaintiffs' 1st Derivative Claim Fails to Support the Requested Declaratory Relief.**

Plaintiffs seek declarations that the Atakoras were removed as Managers and that Spice acquired the Baptiste and Akhenthians interests, entitling Plaintiffs to increased membership percentages. (Am. Compl. ¶¶ 97–102.) Neither the allegations nor the Operating Agreement support the requested declaration.

First, Plaintiffs' purported removal of the Atakoras was ineffective under the Operating Agreement. Although § 4.2 of the Operating Agreement permits removal by "majority agreement of the Members," § 3.5 expressly provides that "[e]ach Member shall be entitled to vote based on Membership Interest." (Doc. 17-1, §§ 3.5, 4.2.) Contractual provisions must be construed harmoniously, giving effect to each. *Galloway v. Snell*, 384 N.C. 285, 287-88 (2023). Section 4.2 of the Operating Agreement establishes the approval required for removal of Managers; § 3.5 governs how Members' votes are weighted. Plaintiffs' contrary interpretation would create an unwritten exception to § 3.5, allowing the absurd result of Members holding only 12% of Spice to remove Spice's Managers over the objection of the 88% majority Member. Plaintiffs' vote therefore did not effectuate the Atakoras' removal.

Second, Plaintiffs fail to establish a basis for their requested reallocation of membership interests. Plaintiffs allege that 1221 purchased the Baptiste and Akhenthians interests using Spice's funds. (Am. Compl. ¶¶ 51–53.) Even accepting that allegation, the source of the purchase funds does not automatically establish that Spice became the purchaser or that Plaintiffs' membership percentages increased. Although misuse of company funds may support an accounting, equitable lien, or constructive trust for the company's benefit, *see McGurk v. Moore*, 234 N.C. 248, 252 (1951), Plaintiffs identify no contractual or statutory provision requiring a proportional

reallocation of membership interests based solely on the alleged source of consideration. Accordingly, the requested declaration that Spice acquired the interests and that the remaining Members' percentages must be adjusted does not follow from the pleaded facts.

Because neither the Operating Agreement nor the pleaded facts support the requested declarations, Defendants respectfully request that the Court dismiss Plaintiffs' 1st Derivative Claim. Alternatively, Defendants request that the Court narrow the claim to exclude declarations that Spice acquired the repurchased interests or that Plaintiffs' membership percentages increased.

b. **Plaintiffs Fail to Allege an Actionable Breach of Fiduciary Duty in their 2nd Derivative Claim.**

Plaintiffs cannot state a breach of fiduciary duty by pleading conduct the Operating Agreement permits or allegations of misconduct that lack factual support. Article 7 of the Operating Agreement permits 1221, as a Member, to pursue independent ventures. (Doc. 17-1, Art. 7.) Operating Spice Atlanta alone therefore establishes no breach by the Atakoras, who are not even Members. Plaintiffs identify no specific additional misappropriation or unauthorized post-removal disbursement (Am. Compl. ¶¶ 40, 58).

Therefore, Defendants respectfully request that the Court dismiss Plaintiffs' 2nd Derivative Claim, or, alternatively, narrow it to exclude theories based solely on 1221's operation of Spice Atlanta and unsupported allegations of additional misappropriation or post-removal disbursements.

**c. Plaintiffs' 9th and 10th Derivative Claims for Conversion and Civil Embezzlement Fail.**

Plaintiffs fail to allege sufficient facts establishing conversion or fraudulent appropriation of Spice's funds. Conversion of money requires identifiable funds. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528–29 (2012). Civil embezzlement under N.C. Gen. Stat. § 1-538.2 requires an act punishable under § 14-90: the defendant must have lawfully acquired the property through a fiduciary or employment relationship and subsequently embezzled or fraudulently or knowingly and willfully misapplied it. *Shaw v. Shaw*, 2014 NCBC LEXIS 107, *3-4, 2014 NCBC Order 2; N.C. Gen. Stat. §§ 1-538.2(a), 14-90.

Although Plaintiffs identify the dates and consideration for the 2024 repurchases, they identify no disbursement from Spice's accounts used to fund either transaction, despite possessing Spice's general ledger covering both repurchases. (Am. Compl. ¶¶ 32, 51–53.) Their allegations of other unauthorized payments likewise fail to identify particular disbursements or facts establishing fraudulent or knowing and willful misappropriation. (Id. ¶¶ 40, 58, 165–72.) Defendants respectfully request that the Court dismiss Plaintiffs' 9th and 10th Derivative Claims because they fail to identify the funds allegedly converted or allege facts establishing fraudulent or knowing and willful misappropriation.

**d. Plaintiffs' 11th Derivative Claim, for Civil Conspiracy, Fails.**

North Carolina recognizes no independent claim for civil conspiracy absent an underlying unlawful act. *Toomer v. Garrett*, 155 N.C. App. 462, 483 (2002). Plaintiffs merely allege, upon information and belief, that 1221 Hospitality and the Atakoras agreed to commit the alleged wrongs. (Am. Compl. ¶¶ 175–77.) Plaintiffs identify no facts supporting an agreement or concerted

action distinct from the underlying alleged misconduct. Such conclusory allegations do not plausibly establish a conspiracy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, because 1221 allegedly acted through the Atakoras, the intra-corporate immunity doctrine precludes conspiracy liability absent an independent personal stake. *Maurer v. SlickEdit, Inc.*, 2005 NCBC 1, ¶¶ 59–61. Because Plaintiffs allege no such independent interest, their Civil Conspiracy claim fails.

Defendants respectfully request that the Court dismiss Plaintiffs' 11th Derivative Claim because Plaintiffs fail to allege facts establishing a conspiratorial agreement or an independent personal stake sufficient to overcome intra-corporate immunity.

**e. Plaintiffs' 12th Derivative Claim, for Aiding and Abetting Breach of Fiduciary Duty, Fails.**

North Carolina does not recognize a claim for aiding and abetting a breach of fiduciary duty. *BDM Investments v. Lenhil, Inc.*, 264 N.C. App. 282, 302 (2019), *Noblee Bottling, LLC v. Gora LLC*, No. 3:20-CV-00363-KDB-DCK, 2023 U.S. Dist. LEXIS 128383, at *6 (W.D.N.C. July 24, 2023). A federal court applying state law must "rule upon state law as it exists and…not surmise or suggest its expansion." *Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993). Even if North Carolina recognized such a claim, Plaintiffs fail to allege facts establishing knowing, substantial assistance. Plaintiffs merely assert that 1221 Hospitality "provided substantial assistance" to the Atakoras and that each Atakora "provided substantial assistance" to the other, without identifying conduct constituting assistance distinct from the underlying alleged breaches. (Am. Compl. ¶¶ 179–82.) These conclusory allegations fail to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' 12th Derivative claim is also incoherent on its own terms: it names the Atakoras as both the primary wrongdoers and the aiders of each other, and names 1221 Hospitality, whose only alleged "assistance" is being the entity through which the Atakoras acted, as a third. (Doc. 17, ¶¶ 179–82.) Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' 12th Derivative Claim because North Carolina does not recognize the cause of action and, independently, Plaintiffs fail to allege facts sufficient to support it.

**f. Plaintiffs' Derivative Demands Fail to Encompass Several of their Alleged Claims.**

Plaintiffs' pre-suit demands address three specific matters: the Baptiste and Akhenthians transactions, the disputed removal of the Atakoras as Managers, and Spice Atlanta. (Docs. 17-3, 17-6, 17-8.) Plaintiffs' derivative demands do not fairly encompass separate claims arising from (1) alleged "further misappropriation of Spice's assets" (Am. Compl. ¶ 105(c)); (2) "other unauthorized use of Spice's funds" unrelated to the identified repurchases (id. ¶ 171); or (3) separate post-removal expenditures, including salaries, allegedly constituting fiduciary breaches, conversion, or embezzlement (id. ¶¶ 58, 105(d), 167, 172).

Although the March 2026 demand seeks confirmation of the Atakoras' removal, it does not request recovery of post-removal payments. (Doc. 17-6.) Accordingly, to the extent Plaintiffs' fiduciary-duty, conversion, and embezzlement claims rest on misconduct independent of the transactions identified in their demands, Defendants respectfully request that the Court dismiss or narrow those theories. N.C. Gen. Stat. § 57D-8-01(a)(2); Zoutewelle v. Mathis, 2018 NCBC 94, ¶¶ 30–38.

**3. Plaintiffs' Remaining Individual Claims Fail.**

**a. Plaintiffs' 1st Individual Claim for Statutory Inspection Rights Fails Against the Atakoras and Exceeds the Statute's Scope as to Spice.**

Plaintiffs' inspection claim fails against the Atakoras and exceeds the permissible scope of statutory inspection to the extent it seeks unrestricted access to Spice's records.

Although N.C. Gen. Stat. § 57D-3-04(a)(5) entitles Members to information concerning the LLC's business and financial condition, that right does not extend to every underlying transaction or business record. Plaintiffs demand all bank statements and general ledgers since Spice's formation, detailed compensation and affiliate-transaction records, membership-transfer documents, historical budgets, and other financial information. (Doc. 17-4, 2–3.)

In *Brown v. Onslow Bay Marine Group, LLC*, 2022 NCBC 81, ¶¶ 38–39, 41, the Business Court determined that particular requests for transaction records, contracts, and compensation information were outside the scope of § 57D-3-04(a)(5). Similarly, *Amory v. ACTS Contracting, Inc.*, 2019 NCBC Order 41, ¶ 39, permitted inspection of financial statements and general ledgers but denied broader requests, including bank statements. Neither decision categorically excludes transaction-level records; rather, both demonstrate that statutory inspection rights have limits.

The Operating Agreement separately identifies financial statements, meeting minutes, and operating plans and budgets among Spice's required records. (Doc. 17-1, § 4.7.3.) It does not expressly grant unrestricted access to every underlying transaction. Moreover, § 57D-3-04(f) authorizes reasonable restrictions, including redactions, summaries, and confidentiality agreements.

Defendants respectfully request that the Court dismiss Plaintiffs' 1st Individual Claim against the Atakoras and narrow the claim against Spice to records subject to inspection under § 57D-3-04, with reasonable restrictions as permitted by subsection (f).

**b. Plaintiffs Fail to Identify a Breach of the Operating Agreement by 1221 Related to the 2024 Repurchases**

Plaintiffs fail to distinguish 1221's 2023 sales of membership interests from its subsequent repurchases in 2024. The 2023 sales were governed by § 9.2 of the Operating Agreement, and admission of the transferees as substitute Members was governed by § 10.2, not § 10.3, which requires unanimity for admission of additional Members.

Because 1221 was already a Member when it repurchased the interests in 2024, the repurchases did not require admission of a substitute or additional Member under Article 10. Although § 9.2 of the Operating Agreement governed the transfers, its notice obligations fell on the transferring Members and Managers, not on 1221 merely as purchaser. Section 9.2.4 of the Operating Agreement required approval from Members holding a majority interest in Spice, excluding the selling Members. Nothing in that provision disqualified 1221 from voting merely because it was the purchaser. Further, § 9.5 grants Members a right of first refusal to match a purchase offer made by a "third party." Because 1221 was already a Member, the provision does not expressly grant Plaintiffs a right to match its offer. Although the scope of "third party" may be subject to interpretation, the language supports distinguishing purchases by existing Members from offers by outsiders. (Doc. 17-1, §§ 9.2, 9.5, 10.2–10.3.)

Even assuming deficiencies in the notice or approval process, Plaintiffs identify no contractual obligation that 1221 breached merely by repurchasing the interests in 2024. Defendants respectfully request that the Court dismiss or narrow Plaintiffs' 2nd Individual Claim to the extent it rests on that theory.

**c. Plaintiffs' 3rd Individual Claim Fails to Establish a Fiduciary Duty Owed by 1221 or an Independent Injury.**

Membership in a North Carolina LLC does not, standing alone, create fiduciary duties among Members. *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473 (2009). Although a controlling majority Member may owe fiduciary duties to minority Members under certain circumstances, majority ownership alone is insufficient. *Gvest Real Est., LLC v. JS Real Est. Invs., LLC*, 388 N.C. 563, 572–75 (2025).

Plaintiffs allege that 1221 controls Spice through the Atakoras. (Am. Compl. ¶¶ 199–203.) But the Operating Agreement vests exclusive management authority in the Atakoras, not 1221. (Doc. 17-1, §§ 3.3, 4.1–4.2.) Plaintiffs identify no specific managerial acts directed by 1221 beyond its alleged exercise of membership rights and affiliation with the Managers. Nor do Plaintiffs establish an independent fiduciary injury. Diminished membership value reflects injury to Spice, while their remaining allegations concern governance and information rights addressed by the Operating Agreement and statute. *Gvest*, 388 N.C. at 574–75. Because Plaintiffs fail to allege facts establishing a fiduciary duty owed by 1221 or an injury distinct from Spice's, Defendants respectfully request that the Court dismiss Plaintiffs' 3rd Individual Claim.

**d. Plaintiffs' 4th Individual Claim Misconstrues the MIPAs and Seeks Damages Belonging to Spice.**

Plaintiffs' ownership and warranty theories misconstrue the MIPAs. Section 1.1 of the MIPAs conveyed membership interests, not Spice's intellectual property, and § 3.1(b) warranted title only to those interests. (Doc. 17-2, §§ 1.1, 3.1(b).)

Section 1.3 of the MIPAs separately prohibits payments to the Atakoras or related parties as employees or contractors without Plaintiffs' prior written approval. Plaintiffs allege that they

never provided such approval, that the Atakoras and related parties received unauthorized payments, and that the Atakoras continued paying themselves salaries after their purported removal as Managers. (Am. Compl. ¶¶ 58, 212–14.) Although these allegations may support an inference of employee compensation, § 1.3 does not prohibit payments in every capacity, and Plaintiffs identify no specific compensatory injury to themselves arising from the alleged payments. Any depletion of Spice's funds constitutes injury to Spice, not Plaintiffs individually. Although breach of contract may support nominal damages without proof of actual loss, *Delta Envtl. Consultants of N.C., Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 172 (1999), Plaintiffs cannot recover Spice's losses as their own contractual damages.

Defendants respectfully request that the Court dismiss Plaintiffs' 4th Individual Claim to the extent it rests on alleged breaches concerning Spice's intellectual property and narrow the remaining compensation theory to exclude damages allegedly suffered by Spice.

## V. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' federal claims and decline to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3), dismissing those claims without prejudice. Alternatively, if the Court retains supplemental jurisdiction, Defendants request that the Court dismiss or narrow Plaintiffs' state-law claims as set forth in Section IV.C.

This the 27th day of October, 2026,

**Hull & Chandler**


/s/ Elizabeth Vennum
Elizabeth Vennum
NC State Bar No 49747
Hull & Chandler
1009 East Boulevard
Charlotte, NC 28203
Tel: (704) 375-8488
Fax: (704) 375-8487
lvennum@lawyercarolina.com

**Certificate of Service**

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification to the following:

Patrick Spaugh
Philip Mayer
Womble Bond Dickinson LLP
301 South College Street, Suite 3500
Charlotte, NC 28202
Patrick.spaugh@wbd-us.com
phil.mayer@wbd-us.com

This the 27th day of October, 2026,

/s/ Elizabeth Vennum
Elizabeth Vennum
NC State Bar No 49747
Hull & Chandler
1009 East Boulevard
Charlotte, NC 28203
Tel: (704) 375-8488
Fax: (704) 375-8487
lvennum@lawyercarolina.com